WILLIAM SCOTT, an Infant, by ALEXANDER H. CROSBIE, his Guardian ad Litem, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Dismissal of a complaint on the opening — facts considered on an appeal — munici-*
*pal corporation — liability of, for an assault committed by its employees while*
*removing incumbrances from the street — who are public officers and who agents*
*of the city.*

Where a complaint is dismissed upon the opening of counsel at the trial of an action, all the facts alleged in the complaint and also those referred to in the opening, even though they are not stated in the complaint, should be considered, on an appeal, unless they are objected to upon the specific ground that they are not admissible under the pleadings.

Persons employed by a municipal bureau of incumbrance to remove obstructions from a city sidewalk are not public officers engaged in a public duty, but are agents of the municipal corporation, upon which that duty is imposed in its private capacity, and for their acts the corporation is liable to the extent that a master is liable for the acts of his servants while engaged in the master's business.

Where such employees, while engaged, under orders from the bureau, in removing trunks and traveling bags which incumber a sidewalk in front of a store, and which it is their duty to put in a place of detention provided by

the city, attempt to take by force from a boy passing through the street a traveling bag which they mistakenly suppose to be one of those which they have already removed from the sidewalk, such an act must be considered to have been done by them as agents of the municipal corporation in its private capacity, and renders the corporation liable for injuries inflicted by such agents upon the boy in the struggle resulting therefrom.

APPEAL by the plaintiff, William Scott, an infant, by Alexander H. Crosbie, his guardian *ad litem*, from an order and judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of December, 1897, upon the dismissal of the complaint by direction of the court on the opening of the plaintiff's counsel at the New York Trial Term.

*Elmer S. White*, for the appellant.

*Theodore Connoly*, for the respondent.

RUMSEY, J.:

The action was brought to recover damages for injuries inflicted upon the plaintiff by two persons in the employ of the department of public works in the bureau of incumbrances. Upon the trial the complaint was dismissed and an appeal is taken from the judgment entered upon that dismissal. Where a complaint is dismissed on the opening of the counsel, all the facts alleged in the complaint and those referred to in the opening should be considered, even although they are not stated in the complaint, unless they are objected to upon the specific ground that they are not admissible under the pleadings. (*Clews* v. *The Bank of New York Nat. Banking Assn.*, 105 N. Y. 398.) The facts thus stated and alleged are substantially as follows : The plaintiff was in the employ of one Doyle at No. 2 Vesey street in the city of New York. In front of No. 1 Vesey street, which seems to be next door to No. 2, and not on the opposite side of the street, certain traveling bags and trunks had been set out for show upon the sidewalk in such a way as to be an incumbrance on the street. The two men who inflicted the injuries upon the plaintiff were sent by the superintendent of the bureau of incumbrances, as it was his duty to do, to remove these articles incumbering the sidewalk. While they were thus engaged, the plaintiff was directed by his employer to take a leather traveling bag from his

store to the factory to be repaired. That bag resembled those which the two men were removing from in front of No. 1 Vesey street. The plaintiff took the bag and left the store upon his errand. He was observed by the two men as they were engaged in removing the property, and they had reason to believe and did believe that the bag he was carrying off was one of those they had just removed from the front of the store. Under that belief they undertook to take the bag from him by force, and while they were so engaged, Scott received the injuries of which he complains in this action. In endeavoring to take this bag from him these men had no private grudge or malice against him, and they had no intention of inflicting any willful injuries upon him, but they acted only in the belief that he was trying to take away a bag which they had just removed from the sidewalk and which they supposed it was their duty to guard.

Upon this state of facts the questions presented are, in the first place, what was the nature of the duty imposed upon the two men in removing the incumbrances; and, in the second place, were they, when they inflicted the injuries upon the plaintiff, acting within the scope of the duties which they were set to do, or had they reason to believe they were so acting? That these bags and trunks were an incumbrance upon the highway must be conceded. It is the duty of the municipal corporation to see to it that no obstructions or incumbrances are permitted to remain upon the highway, and it is responsible for any injury which may happen because of its failure to perform its duty. (*Turner* v. *The City of Newburgh*, 109 N. Y. 301.) The duty is not a public one, such as that which rests upon a police officer to make an arrest or upon the keeper of a prison to properly control it, but it is in its nature private and the persons performing it are the agents of the corporation upon which the duty is imposed in its private capacity; and these agents are not public officers engaged in a public duty, and for their act while so engaged the corporation is liable precisely to the extent that any other master is liable for the acts of his servants while engaged in his business. (*Conrad* v. *The Trustees of Ithaca*, 16 N. Y. 158; *Weet* v. *The Village of Brockport*, Id. 161, note; *Maxmilian* v. *The Mayor*, 62 id. 160, 169, 170; *Ehrgott* v. *The Mayor*, 96 id. 264; *Nelson* v. *Village of Canisteo*, 100 id. 89.) In the two cases reported in 16 New York the nature and origin of the duty imposed upon

municipal corporations in the management and control of the highways is thoroughly examined and the conclusion reached that the officers of the corporation while engaged in duties of that nature are agents of the corporation, and for their neglect or default the corporation is liable. The distinction between that class of duties and those duties of a public nature as to which the officers of a corporation act in their public capacity, and for which the corporation is not responsible, is considered in the case of *Maxmilian* v. *The Mayor* (*supra*) in the pages cited above. The distinction is well settled and is thoroughly established and is relied upon as the basis upon which the liability of the corporation is founded in many cases. When an incumbrance exists which it is the duty of the corporation to remove, the existence of the duty and the liability of the corporation for its performance are not at all affected by the nature or extent of the incumbrance or obstruction. Whatever the incumbrance may be, it is the duty of the corporation to remove it within the rules established above, and for the performance of that duty the corporation is liable. These two men having been intrusted as the employees of the corporation with the performance of this duty imposed upon it, the corporation was undoubtedly liable for everything which they did within the scope of the task intrusted to them. They were sent there to remove these incumbrances. Their duty was not performed by taking the articles away from the place where they found them and leaving them in the street to be the prey of the first person who came along, but it is their duty to protect them and to see that they were taken to the place provided for that purpose. It is provided by the ordinances of the city that when property is found incumbering the street, it shall be taken possession of by the persons whose duty it is to remove it, and taken to the corporation yard that it may be redeemed by the owner within a certain time. Until such time it is the duty of the officers of the corporation to keep the property so that it may be redeemed. When, therefore, these men undertook to remove these incumbrances, they were bound not only to remove them, but to put them in the place provided by the city where they might be kept until the time for the owner to redeem them had expired. This was just as much a part of their duty as it was to remove them from the street, and while they were engaged in this they were just as much engaged in the business for which they had been sent there as

while they were abating the obstruction in the highway. The lia-
bility of the defendant for their acts continued during all the time
they were engaged in this business, and while they were so engaged
the city was responsible *civiliter* for such acts, if they were done
within the scope of their employment. It being their duty to see
that these articles were properly kept, they were bound not to per-
mit any unauthorized person to take them away, and if any one
attempted to do that they were not only at liberty, but it was their
duty, to use such force as was necessary to see that the property was
not carried off. There was imposed, therefore, upon them the
necessity of considering whether, in this case, Scott was engaged in
taking away the property which they were bound to keep. If he
was so engaged, then, of course, it was incumbent upon them to pre-
vent it. The city had sent them there not only to prevent the tak-
ing away of this property, but to act if they had reason to believe
that anybody was taking it away; and it had imposed upon them the
duty of judging whether the necessity existed to protect the prop-
erty which they were removing; and it is conceded that they had
reasonable ground to believe, and did believe, that they were acting
within the scope of their duty. The city is, therefore, liable for
their action although, as a matter of fact, they were mistaken in their
judgment. This proposition is laid down in the case of *Higgins* v.
*The Watervliet Turnpike & R. R. Company* (46 N. Y. 23). In that
case Higgins was a passenger on the defendant's railroad, and he had
been ejected from the cars by the conductor who claimed that he
was drunk and disorderly. For that act he brought an action against
the defendant. His claim was that he was not drunk or disorderly,
but that he was behaving himself properly and that no reason existed
for ejecting him from the cars. Upon that theory of the case the
court was requested by the counsel for the defendant to charge that
if the act of the conductor in removing him was unlawful and not
justified by the circumstances, the plaintiff could not recover for
any personal injuries occasioned by the assault of the conductor,
there being no evidence of authority from the company to permit
it. This charge was refused and the defendant excepted. The
plaintiff had a verdict. This verdict was necessarily founded
upon the proposition that the plaintiff was not drunk or dis-
orderly and that the circumstances did not justify his expulsion

from the cars, and the question was whether, that being so, the defendant was liable for the act of the conductor in so ejecting him, although the conductor had no authority to eject him unless he was in fact drunk or disorderly. The court say that the expulsion of the plaintiff, if not justified by his misconduct, was an unlawful assault, and the question arises whether the defendant is responsible for the injury occasioned by the unlawful act of its servant done under a mistake of facts, or a mistake of judgment upon the facts, although in the course of the business of the master. This, it will be seen, is precisely the question presented by the case at bar. The question in the case cited was answered in the affirmative, and the reason was that, although the defendant could act only through its agents, the appointment of an agent with authority to maintain order and to eject a passenger who had forfeited his right to ride necessarily cast upon that agent the duty of deciding whether in the given case the misconduct was such as to justify the expulsion. The court say that the duty of deciding being cast upon the officer, he represents the defendant; he may misunderstand or misjudge the facts; he may act unwisely or improperly, or even recklessly, but the business of preserving order and enforcing the regulations of the company is committed to him, and for his act in that business the company is responsible. In these cases liability for the negligence or tort of his servant does not depend upon the existence of an authority to do a particular act from which the injury resulted. In most cases where the master has been held liable for the negligence of his servant, not only was there an absence of authority to commit the wrong, but it was committed in violation of the duty which the servant owed to his master. It is sufficient in these cases to make the master responsible in a civil action if the wrongful act of a servant is committed in the business of the master and within the scope of his employment, although the servant in doing it departed from the instructions of his master. This case has been followed in numerous cases, and it must be deemed to be the established law of this State. (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Palmeri* v. *Manhattan Ry. Co.*, 133 id. 261; *Lang* v. *N. Y., L. E. & W. R. R. Co.*, 80 Hun, 275; Wood Mast. & Serv. §§ 282, 288, 307; *Goff* v. *G. N. Ry. Co.*, 3 El. & El. 672.) While each of these cases is brought against a common carrier of passen-

gers, it will be seen that in none of them is that fact depended upon to authorize the judgment which was rendered. Indeed, in some of them the relation of a passenger did not exist. In each case the ground of the decision was that which is stated in the case of *Higgins* (*supra*), and it depends solely on the relation of master and servant between the defendant and the employee and not at all upon the relation of passenger and carrier. The application of this principle thoroughly established the liability of the defendant here for the acts of the two men within the facts alleged in the complaint and stated in the opening.

For these reasons it was error to dismiss the complaint, and the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., BARRETT, PATTERSON and O'BRIEN, JJ., concurred.

BARRETT, J. (concurring):

I concur with Mr. Justice RUMSEY in this case. In the removal of obstructions and incumbrances from the highway, as required by law, the municipal corporation performs something more than a police or governmental function. The city is liable for damages resulting from its failure to remove such obstructions or incumbrances. It follows that in doing what is thus required to avoid direct corporate liability, the city essentially acts for its own corporate benefit, and the persons to whom it intrusts the duty become its agents. The city is, in this view, clearly liable civilly for the acts of these agents, done by them within the scope of their authority.

The question in the present case, therefore, is whether the seizure of the bag in question, and the force used to obtain it, were within the scope of the agents' authority. It will be observed that the complaint was dismissed upon the pleadings and upon the plaintiff's opening. Now, in the 9th paragraph of the complaint, it is distinctly averred that all the acts done by these agents, of which the plaintiff complains, were so done in the transaction of the defendant's business and in furtherance of its orders. It is also averred that these acts were done while the agents were actually engaged in seizing and removing the incumbrances in question. The plaintiff's counsel claimed in his opening that these agents acted upon the

belief, reasonably caused by the surrounding facts and circumstances, that the leather bag which the plaintiff had in his hand, and which they attempted to take from him, was a part of the mass of goods which constituted the incumbrances, and which they were directed to seize and remove. This was further emphasized by the counsel's further statement that there was " some evidence in his case " which he thought would satisfy the jury that these men believed that the plaintiff had taken and was going away with one of the very bags which they had already seized. All this, he said, transpired directly in front of the basement where the agents were operating, and where the horse and wagon belonging to the bureau of incumbrances stood awaiting their action.

Upon this state of facts it seems to me quite clear that the plaintiff should have been permitted to put in his evidence. There was nothing, either in the complaint or opening, to conclude him absolutely upon any material question in the case. He might have shown that the tortious acts of the defendant's agents were committed in the corporate business, and were within the scope of their authority. The case presented by this complaint and opening was not necessarily that of a wanton seizure from a passing citizen of a bag which he happened to be carrying, upon the wholly unfounded assumption that it was a part of some neighboring incumbrance. The plaintiff was ready, and in substance offered, to prove that the defendant's agents had reasonable cause to and did believe that the bag in question was part of the incumbrances which at that very moment they were in pursuit of, and that the plaintiff was seeking to frustrate them in the performance of their immediate duty.

The learned trial justice did not consider the latter question. He nonsuited the plaintiff primarily upon the ground that the men were not acting as the defendant's agents, but as independent public officers performing police or governmental duty. Had he treated these men as corporate agents he would doubtless have permitted the plaintiff at least to make the attempt to prove that they were acting within the scope of their authority. For these reasons, as well as for those given by Mr. Justice RUMSEY, I agree to the reversal.

Judgment reversed, new trial ordered, costs to appellant to abide event.