title from vesting in him. The title to the property, then, contemplat ed by the guarantee, was one which should pass directly from the plaintiff to the defendant, and the condition upon which such title was to pass was, in effect, the failure on the part of Becker to acquire title thereto by reason of his default. When that took place, and when the defendant was called upon to make the payments which he had guarantied, and such payments were made, the condition upon which the title was to pass to him had been satisfied, and he became absolutely entitled to the property as the plaintiff's vendee. It is obvious that the plaintiff has in no way whatsoever prejudiced its right to recover by reason of its resumption of the possession of the bicycle.

The defendant questions the sufficiency of the proof of Becker's default in payment. No motion, however, was made by the defendant to dismiss the complaint at any stage of the case on that ground; and, furthermore, the allegations in that regard contained in the complaint must be deemed to be admitted, in view of the fact that the defendant has sought to put them in issue under a denial of knowledge or information sufficient to form a belief. He has failed to do so, however, inasmuch as this form of pleading is not authorized in actions brought in the municipal court. Steinam v. Bell, 7 Misc. Rep. 319, 27 N. Y. Supp. 905.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

## GIRVIN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1900.)

MASTER'S LIABILITY—SERVANT'S NEGLIGENCE—SCOPE OF AUTHORITY.

Whether a brakeman was acting within the scope of his authority when, after ejecting plaintiff, a trespasser, from defendant's train, he struck and kicked him, was a question for the jury, in an action against the railroad for injuries.

McLennan and Spring, JJ., dissenting.

Appeal from trial term, Onondaga county.

Action by William J. Girvin, an infant, by his guardian ad litem, against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

William Nottingham, for appellant.

Frank Hiscock, for respondent.

WILLIAMS, J. The action was brought to recover damages for injuries to the plaintiff alleged to have been caused by the negligence of the defendant. The plaintiff was a boy 14 years of age. He was driven off one of the defendant's trains while in motion, by a brakeman in charge, and sustained a severe fracture of the right leg; confining him to the hospital for 10 months, and permanently disabling and impairing the use of that member. The train in question was

known as the "Solvay Pull." It was a freight train, composed of box and flat cars, employed in the transportation of material and supplies between the yards of the defendant in the city of Syracuse and the works of the Solvay Process Company, a large manufacturing concern located at the village of Solvay, adjoining the city limits on the west. The boys who lived in the vicinity of defendant's yards often rode up from Syracuse to Solvay and back upon this train, and this was frequently permitted by the employés in charge of the train. This particular brakeman had seen the boy on the train before, and did not disturb him. Sometimes he objected to the boys' riding on the train, and chased them off, and sometimes he did not. Upon the day of the accident, the plaintiff, with some other boys about his age, rode from Syracuse to Solvay upon this train, and remained playing about until it was ready to return. As the train started back towards the city, the boys, including the plaintiff, got aboard, and the plaintiff took a seat upon a log which rested upon two flat cars. While he was sitting there the brakeman in charge of the train approached from the rear, and, as he saw the boys, hallooed at them, and ran at them in a threatening manner, to drive them off the train, which was moving quite slowly. The other boys, warning the plaintiff of the brakeman's approach, jumped off the train. The plaintiff ran forward upon the flat car. The brakeman followed him up, shouting angrily at him, and coming closer to him as both ran along. They went upon and along the flat car next in front of the one on which the plaintiff had been seated, and as the plaintiff came to the forward end of the car the brakeman came close to him, and was reaching his hand to seize the plaintiff, when the plaintiff jumped from the car to the ground, and the brakeman jumped after him. Both left the car about the same time, and reached the ground together; the brakeman coming in contact with the plaintiff before they reached the ground, and landing upon the boy. As they struck the ground the plaintiff's leg was fractured. The brakeman seized the plaintiff, raised him up, kicked and struck him, and then dropped him and jumped back upon the train. This is a fair statement of the facts as claimed by the plaintiff at the trial. It cannot be said, under the pleadings and the evidence, that it could be found that the plaintiff was injured by being frightened from the train and merely jumping to the ground. The plaintiff must stand upon his pleading and the proofs given in his behalf. The nonsuit was granted upon the sole ground that the brakeman was not acting within the scope of his authority when he followed the plaintiff from the car and jumped upon him, thus fracturing his leg. This is the only question involved in this appeal.

In Mott v. Ice Co., 73 N. Y. 543, it was said:

"The rule recognized in all the recent cases, and which does not materially conflict with any of the older decisions, although it may qualify some of the intimations and casual expression of the judges, is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to a furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. * * * But if a servant goes outside of his employment, and, without regard to his service, acting mali-

ciously, or in order to effect some purpose of his own, wantonly commits a trespass or causes damage to another, the master is not responsible. So that the inquiry is whether the wrongful act is in the course of the employment, or outside of it, and to accomplish a purpose foreign to it. In the latter case the relation of master and servant does not exist so as to hold the master for the act."

This is a concise statement of the law, which has been cited and approved in all the later cases. The facts in this case are not precisely like those in any of the cases cited by counsel on either side, and the facts of no two of the cases are just alike. The only question here is whether the law as we have quoted it makes the master liable in this case.

It was said in Rounds v. Railroad Co., 64 N. Y. 129:

"If the master, when sued for an injury resulting from the tortious act of his servant while apparently engaged in executing his orders, claims exemption on the ground that the servant was in fact pursuing his own purposes, without reference to his master's business, and was acting maliciously and willfully, it must ordinarily be left to the jury to determine this issue upon a consideration of all the facts and circumstances proved."

Looking now to the facts of this case, it appears that the defendant was troubled, not on this single occasion, but constantly, by the boys jumping upon and off of its trains, and riding upon its trains, between Syracuse and Solvay. It seemed to be impossible to keep them off. If they were driven off one part of a train, they would climb upon another part. There was so much of this trouble that the brakemen were at their wits' ends to deal with it. It was the duty of the trainmen not only to drive the boys off, but to keep them off, so far as it was possible for them to do so; and apparently the brakeman on the occasion in question was intent upon the performance of this duty, and was thus engaged in his master's business, and was acting within the general scope of his employment. He was trying to drive the boys off the train and keep them off. He very likely acted negligently in jumping upon the plaintiff after the plaintiff left the car, but it is difficult to see how he was acting maliciously in order to effect any purpose of his own, outside of the attempt to drive the plaintiff off the train and keep him off. He had no purpose foreign to such duty to perform. He did not, in the language of the court in the Rounds Case, "under the guise and cover of executing his master's orders, and exercising the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own, independent, malicious or wicked purpose," inflict the injury upon the plaintiff. He was so bothered by the boys and by the plaintiff that on this occasion he lost his temper and, under the influence of passion, acted negligently, recklessly, and without judgment or discretion; but the master was not thereby excused from responsibility for his acts. It was said in the Rounds Case:

"It is, in general, sufficient to make the master responsible that he gave to the servant authority or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted

an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another."

Within these rules of law, the court should have determined that the defendant was liable for the act of the brakeman, or at least should have left it to the jury to say, under the circumstances proved, whether the injury was inflicted while the brakeman was acting within the scope of his authority, which was to drive the boys off the train, and keep them off, so far as he was able to do. It was not within the province of the court to hold, as matter of law, that the brakeman was not acting within the scope of his authority, and that therefore the defendant was not liable for his act in inflicting the injury. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order appealed from reversed, and new trial ordered, with costs to abide event.

ADAMS, P. J., and LAUGHLIN, J., concur.

McLENNAN, J. (dissenting). On the 8th day of December, 1897, the defendant was engaged in running a freight train, composed of box and flat cars, from the works of the Solvay Process Company, adjoining the city of Syracuse on the west, to its yards in said city. Upon that day the plaintiff, who was then about 14 years of age, with other boys boarded the train as it was leaving the village, to ride to the city. Concededly, the plaintiff had no right upon the train, and was not there by invitation of the defendant, and it was the duty of the trainmen to prevent all persons other than employés from riding thereon. While the plaintiff was sitting upon one of the cars, and the other boys were scattered about on other parts of the train, one of the brakemen approached from the rear end, hallooed at the boys, and ran towards them in a threatening manner, to drive them off. The plaintiff's companions, after warning him of the brakeman's approach, leaped from the train. The plaintiff ran towards the front end of the train, the brakeman following him. When the plaintiff reached the forward end of the flat car next ahead of the one upon which he had been sitting, and when the brakeman had nearly reached him, he jumped off, and the brakeman jumped to the ground after him, striking the plaintiff's leg, by which it was fractured, and which is the injury complained of. According to the plaintiff's testimony, after he and the brakeman reached the ground the brakeman picked him up, kicked and struck him several times, and then jumped upon the train, which was moving at a very slow pace. The evidence conclusively establishes that the plaintiff's leg was not broken because of anything which happened while he was upon the train, or by striking the ground in jumping from the car, but that it was broken by the brakeman jumping upon or against it after they had both left the train. The plaintiff testified upon his direct examination as follows:

"As I looked around I saw the brakeman dropping down off the box car west of me, on the flat car. He hallooed at me; run after me, and I ran down over one flat car. I jumped onto the other. He hallooed at me; ran after me. I ran east over the flat car where I was sitting onto the other; that is, on the flat car beyond that. He was chasing me and was hallooing at me. The engine started up just as he started after me. As he chased me, hallooing at me, I ran down to get to the other box car, and got to the handle on the left side. I could not get up. The handle was on the left side. I jumped off, and he jumped right on top of me; knocked me to the ground. Then he caught me by the back of the coat, gave me a kick, and raised me up and hit me in the face five or six times. He left me then and jumped on the train.  *  *  * Q. How soon after you landed, before he landed on top of you? A. He came right on top of me, before I struck the ground. He was on top of me when I struck the ground. Q. Did he strike your leg? A. Yes. sir; he jumped right on top of me. My right leg was broken. That was the leg he jumped onto.  *  *  * Q. Where was it that your leg was broken? A. Right there [indicating], between my knee and ankle."

## On cross-examination the witness stated:

"On this occasion I ran because sometimes he [the brakeman] chased me off. Other times he would not. I was afraid of him,—the way he looked at me. I ran across the car. Don't know just how far ahead of him I was. I was not very far.. He was within seven feet of me when I started. When I got over to the box car I seen I could not get across. I did not try to get across. I looked. I was afraid to cross. I turned around to see where he was. He was right on top of me, trying to get hold of me. I jumped right off. He jumped on top of me. The engine had just started up. Q. Did you land on your feet? A. Yes, sir. Q. Your hands and feet? A. On my feet.. Just as I jumped, he jumped right on top of me; fell onto me. We both struck the ground together. I did not fall on my face before he struck me. I landed squarely on my feet. Q. Were you standing up when he struck you? A. No, sir; I was lying down. He picked me up. Q. When he jumped off, were you standing up? A. I jumped, and he jumped right on top of me. I had not struck the ground before he struck me. We both struck the ground about the same time. My body fell over to the side. He was on top of me, and my legs and all went over. He was on top of me. We both struck the ground together. My leg was cracked with the weight of him on top of me. I jumped first. and landed square on my feet. I had not landed on my feet when the brakeman struck me. I had not landed on the ground when he jumped on me.. It was in mid-air. I was off the ground when he struck me. My leg was not against anything. I was just in the act of falling—jumping—from the car to the ground when he jumped too. My leg broke when he struck me. That was before I struck the ground."

## On redirect examination the witness testified:

"As I jumped off the car, he [the brakeman] jumped at the same time, so we practically struck the ground together. Up to the time he struck my leg, there was not anything the matter with my leg. As I felt my leg crack, he was right on top of me. There was nothing by this point where my leg cracked, that I know of, only the path right between the two cars. His feet struck my leg at this point where it was broken."

Joseph Stull, a witness called by the plaintiff, testified that he "saw the brakeman land on his [the plaintiff's] leg." All the witnesses called by the plaintiff who saw the accident said, in words or in substance, that the plaintiff's leg was broken by being struck or jumped upon by the brakeman, and not by striking the ground as he jumped from the car.

The brakeman, who was called as a witness by the defendant, testified that he did not jump upon the boy or upon his leg when he left the car; and it is urged on behalf of the plaintiff that, upon his evi-

dence, the jury would have been justified in finding that the plaintiff's leg was broken by striking the ground when he jumped from the car. Such a finding would be in direct conflict with all the evidence given upon the part of the plaintiff, and with his theory of the manner in which the injury complained of was caused. Such a finding would also be in conflict with the allegations of the complaint. The allegation is "that said brakeman, whose name is, as plaintiff is informed and believes, Alva Lincoln, jumped immediately after this plaintiff, striking him as he landed, and thereby breaking this plaintiff's leg." The action was tried upon the theory that the allegations above quoted stated correctly the manner in which the plaintiff was injured, and all the evidence on the part of the plaintiff was given to support that theory, and no other. No motion was made to amend the complaint, and no suggestion was made by plaintiff's counsel at any stage of the trial that a recovery could be had upon any other theory. Under those circumstances, we think the learned trial court would not have been justified, upon its own motion, in leaving it to the jury to determine whether the plaintiff's leg was broken by striking the ground upon jumping from the car, for the purpose of basing a recovery thereon. The rule laid down in the case of Painton v. Railway Co., 83 N. Y. 7, and Bank v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311, cited by appellant's counsel, does not apply. In those cases it was simply held that evidence given by the defendant, after a motion for a nonsuit had been denied, which supplied defects in plaintiff's proof, may be referred to on an appeal to support the decision. Attention has not been called to any case in which it has been held that a recovery may be based solely upon a denial by the defendant of the facts alleged and proved by the plaintiff, even if from such denial the inference may be drawn that another state of facts exists, not claimed by the plaintiff, which might constitute a cause of action. Such a rule would lead to great confusion in the trial of cases, and ought not to prevail. In the case of Sterrett v. Bank, 122 N. Y. 659, 25 N. E. 913, the action was brought by the members of a firm to recover for the alleged conversion of property which was levied upon and sold by the defendant under an attachment and execution against one of the co-partners. The case was tried upon the theory that, if plaintiff's firm was solvent, the levy was proper; if insolvent, it was without authority, and the action was maintainable. The only question litigated was as to its solvency. It was held that the question as to whether, even if the firm was solvent, an action of trover was maintainable, could not be raised on appeal to this court. The headnote is as follows:

"Where a party calls upon the trial court to make a ruling in his favor, he must specify with reasonable clearness the point that he desires considered and decided, in order to predicate error upon an exception to a ruling against him."

In Heimberg v. Railway Co., 162 N. Y. 352, 56 N. E. 899, the headnote is as follows:

"Where the owner has claimed upon the trial that the written paper was insufficient as a consent, he cannot, after a judgment in his favor has been reversed below, change his position, and ask the court of appeals to examine the evidence in order that it may find some fact to overcome the paper, or answer the decision of the reversal."

In Werner v. City of Rochester, 149 N. Y. 563, 44 N. E. 300, it was held:

"An exception to the denial of a motion for a new trial does not enable a party to argue in the court of appeals a point not taken on the trial."

Quinlan v. Welch, 141 N. Y. 158, 36 N. E. 12.

The cases above cited apply with equal force to the suggestion in the prevailing opinion of the court in this case that "it was the duty of the trainmen not only to drive the boys off, but to keep them off, so far as it was possible for them to do so; and apparently the brakeman on the occasion in question was intent upon the performance of this duty, and was thus engaged in his master's business, and was acting within the general scope of his employment," and that for the negligent performance of the duty, by the brakeman, of keeping the plaintiff off the train, the defendant is liable. There is no evidence in the case which in any manner supports such suggestion or theory. No evidence was given tending to show that the brakeman was charged with the duty of keeping the plaintiff or other boys off the train. Plaintiff's experienced counsel at no time during the progress of the trial called the attention of the learned trial court to such a proposition, or suggested that it could be made the basis of a recovery, and he has not argued or alluded to such a proposition upon this appeal. The case was tried and the appeal argued upon the single theory that the brakeman was charged with the duty of removing the plaintiff and other trespassers from the train; that while engaged in the performance of that duty he negligently and willfully inflicted upon the plaintiff the injuries complained of. The point that the brakeman was charged with the duty of keeping the plaintiff and others from getting on the train, that he was engaged in the performance of that duty when the plaintiff was injured, and that therefore the defendant was liable for his negligent acts, was not raised or taken upon the trial, and is therefore not available to the plaintiff upon this appeal. Werner v. City of Rochester, supra.

Assuming that the evidence tended to establish the allegation in the complaint that the brakeman "jumped immediately after this plaintiff, striking him as he landed, and thereby breaking this plaintiff's leg," was the learned trial court justified in granting defendant's motion for a nonsuit? At the time the brakeman attempted to scare the plaintiff and his associates from the train, it was concededly moving at a very slow rate of speed,—had just started, as some of the witnesses stated, and others testified that it had just commenced to move. It was going so slowly that the brakeman was able to jump from the car, chastise the plaintiff, as stated by his witnesses, and again get upon the same car before it had passed the spot where the plaintiff was. Under such circumstances, it may be doubted whether a finding by the jury that the defendant was guilty of negligence because the brakeman, charged with the duty of keeping trespassers off the train, compelled the plaintiff, a boy then 14 years of age, to leave the train while it was moving at such rate of speed, would have been justified. It is evident that if the employés of the defendant were under the obligation of bringing the long, heavy train in question to a full stop before driving the plaintiff and the other boys off,

it would be practically impossible to prevent them from riding at will between the points traversed. After the train had been stopped and the boys driven from it, before it could be started again they would all be back in place, and so the process might be repeated indefinitely. Without, however, passing upon that question, but assuming that the brakeman was not justified in driving the boys from the train while in motion, do the other facts, as alleged in the complaint, and testified to by the plaintiff and his witnesses, establish a cause of action? A master is liable for the wrongful act of his servant, if he gave him authority to act in respect to the business in which he was engaged when the wrong was committed, and the act complained of was done in the course of his employment. Rounds v. Railroad Co., 64 N. Y. 129. "The rule recognized in all the recent cases, and which does not materially conflict with any of the older decisions, although it may qualify some of the intimations and casual expressions or illustrations of the judges, is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. * * * But if a servant goes outside of his employment, and, without regard to his service, acting maliciously or in order to effect some purpose of his own, wantonly commits trespass or causes damage to another, the master is not responsible." Mott v. Ice Co., 73 N. Y. 543; Cohen v. Railroad Co., 69 N. Y. 170; Mars v. Canal Co., 54 Hun, 625, 8 N. Y. Supp. 107.

In the case of Rounds v. Railroad Co., supra, the court says:

"It seems to be clear enough from the cases in this state that the act of the servant causing actionable injury to a third person does not subject the master to civil responsibility in all cases where it appears that the servant was at the time in the use of his master's property, or because the act, in some general sense, was done while he was doing his master's business, irrespective of the real nature and motive of the transaction. * * * If, however, the servant, under guise and cover of executing his master's orders, and exercising the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own independent, malicious, or wicked purposes, does an injury to another, then the master is not liable. The relation of master and servant as to that transaction does not exist between them. It is a willful and wanton wrong and trespass, for which the master cannot be held responsible."

The only question to be determined in this case is as to whether the defendant's brakeman, in leaving the car and jumping upon or against the plaintiff when he was upon the ground and clear from the train, was acting within the scope of his employment, in the performance of the duty imposed upon him by the company. When the facts are ascertained, there can be no question about the rules of law which are applicable. In the case at bar we will assume that the defendant's brakeman was charged with the duty of removing trespassers, including the plaintiff, from the train of which he had charge, and that for any negligent or wrongful act committed while in the discharge of that duty, although acting in excess of his authority, or even done willfully or maliciously, which resulted in injury to a third person, the defendant would be liable. The brakeman,

in the performance of his duty, caused the plaintiff to leave the train, but, however negligently or maliciously that duty may have been performed, it did not cause or result in injury to the plaintiff; but after he had caused the plaintiff to leave the train, evidently because he lost his self-control, or because influenced by anger or passion, he, too, left the train, not for the purpose of serving his master, but for the purpose of inflicting punishment upon the plaintiff, to gratify his passion. There is no evidence tending to show that in chasing the plaintiff the brakeman got under such headway that he could not avoid getting off the train, that he left it involuntarily, or that he had any other purpose than to catch and punish the plaintiff. Such act could in no manner benefit the defendant, was in no sense a part of the brakeman's duty, and was not covered by any instructions given to him by the master. It was a wanton, malicious, and unauthorized act, committed after the plaintiff had ceased to be a trespasser, and after the brakeman had fully performed his duty by causing all trespassers to leave the train. The circumstance that the assault upon the plaintiff was committed almost instantly after he left the train is not of consequence; and yet if, three or five minutes after the plaintiff had safely landed upon the ground, the brakeman had returned and assaulted him because he was angry on account of what had occurred before, it would not be seriously contended that the defendant would be liable for such assault. Time, however, is not of the essence of liability in such case; but, as we have seen, it depends upon whether or not the unlawful act was committed by the servant while engaged in the master's business, and in the course of his employment. To hold the defendant liable in this case would involve assent to the proposition that a conductor or other person in charge of a railroad car or train for a corporation may willfully and maliciously assault a person who has left such car or train pursuant to his command or direction, and make the corporation liable for such unlawful act. We think no case can be found which in any manner tends to support such a doctrine. In the case of Mali v. Lord, 39 N. Y. 381, the defendant's servant caused a policeman to arrest and search a customer suspected of stealing goods. It appeared that the servant had no express or implied authority to cause such arrest to be made, and it was held that the defendant was not liable, although the arrest was caused to be made while the servant was engaged in his master's business. In the case of Feneran v. Manufacturing Co., 20 App. Div. 574, 47 N. Y. Supp. 284, a collector for a vendor of goods sold upon the installment plan committed an assault upon the vendee while attempting to retake the goods because of the nonpayment of an installment. It was held that such an act was not within the scope of the collector's employment, and that the master was not liable. In the case of Rudgeair v. Traction Co., 180 Pa. St. 333, 36 Atl. 859, it was held that the defendant was not liable for the act of his servant, a motorman, who left his car and assaulted a man who was driving a team in front of the car, and who refused to leave the track. An examination of the many cases cited by appellant's counsel discloses the fact that in each case the wrongful act complained of was done by the servant while in the performance

of an act which he had express or implied authority from the master to perform, and before such act had been fully completed. In the case at bar the brakeman had authority from the master to remove trespassers from the train in question, and, so far as appears by the evidence in this case, his duty ended there. For the negligent or wrongful performance of that duty, concededly, the defendant would be liable. At the time the plaintiff was injured that duty had been performed. The plaintiff had left and was clear of the train. After the duty had been performed, and defendant's servant, because angry on account of what had previously occurred, went further, exceeded his authority, and committed a wicked and malicious assault upon the plaintiff.

Upon all the evidence, and under the authorities, the conclusion is reached that the learned trial justice properly granted the defendant's motion for a nonsuit. It follows that the judgment and order appealed from should be affirmed, with costs.

SPRING, J., concurred.