said because he had to sue. He further testified that defendant paid the last $25 on account of $117.50, and that the difference between $39 and $89.50 is what the services are reasonably worth, while the summons, bill of particulars, and judgment specify $85.50.

It seems, in view of the character of the plaintiff's feelings toward the defendant evinced in the voluntary, irrelevant statement to be found on the last page of the stenographer's minutes, plaintiff's interest, contradictory evidence, and the probabilities, that the judgment should be reversed, and that there should be a new trial ordered, with costs to abide the event, unless he stipulates that the judgment be reduced to $53.31, in which event the judgment, modified accordingly, will be affirmed, without costs.

---

### BARRY v. UNION RY. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

1. APPEAL—REVERSAL—WEIGHT OF EVIDENCE.
    Where the number of defendant's witnesses exceeds those of plaintiff, and common knowledge and experience show no inherent probability in the version given by either, the verdict for plaintiff will not be disturbed as against the weight of the evidence.

2. CARRIERS—PASSENGERS.
    Where a newsboy boarded a street car to sell papers without intending to become a passenger by paying his fare or traveling to any particular point, he was not entitled to the rights of a passenger.

3. SAME—AUTHORITY OF EMPLOYÉ—QUESTIONS FOR JURY.
    In an action for injuries sustained in being ejected from a moving street car, where it appeared that plaintiff boarded the car to sell papers without intention of becoming a passenger, and was ejected by the motorman, who lunged for him the moment he discovered him, without inquiring whether he was a passenger, or ordering him inside or off, it was a question of fact for the jury whether the motorman was acting within the scope of his authority; and, if he was not, the defendant was not liable.
    Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by James Barry, by Ella Feeley, his guardian ad litem, against the Union Railway Company of New York. From a judgment for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Bayard H. Ames, for appellant.
Henry L. Franklin, for respondent.

LAUGHLIN, J. On the 22d day of August, 1901, shortly before 6 o'clock in the afternoon the plaintiff, a newsboy then nine years of age, was either pushed off one of the defendant's eastbound cars on 138th street by the motorman, or jumped or fell off while the car was in motion, and one or more wheels of the car passed over his right leg, necessitating amputation; and this action

94 N.Y.S.—29

is brought to recover for the damages thus sustained, on the theory that they were caused by the wrongful act of the motorman.

It was conceded on the trial that the plaintiff was sui juris. He testified that he had a bundle of newspapers under his arm, and was at the corner of Willis avenue and 138th street, endeavoring to sell them, when the car arrived and stopped at that point; that he was summoned by a whistle and call to the car by a regular customer, who desired a paper; that it was a closed electric car, but the gate on the left-hand or up-town side, at the rear of the car, was open, although there was a double track in the street; that he stepped upon the platform through this open gate, and sold a paper to his customer, and then passed through the car toward the front, offering his papers for sale, and, seeing two gentlemen on the front platform, passed out there, and solicited one of them to purchase a paper; that in the meantime the car had started, and reached the vicinity of the middle of the block between Willis avenue and Brown's Place; that this passenger stood to the left of the door, as you faced the front of the car, with his back to the body of the car; that the plaintiff stood in front, facing him, but between him and the motorman; that the front gate on the left side was also open, and that the motorman, on discovering the plaintiff, shoved him off the platform through this open gate on to the street while the car was moving at the ordinary speed between crossings, and, before he was able to regain his feet, his limb was crushed, as already stated. The plaintiff is corroborated by two apparently disinterested witnesses. The only real difference in their testimony is as to the point at which the accident occurred. The plaintiff and one of the witnesses testified that it occurred just before the car reached Brown's Place, and the other witness says that it occurred after it had passed there. The defendant called the conductor, the motorman, two passengers, and two witnesses who viewed the accident from adjacent houses. Some of these witnesses claim to have seen just how the accident took place, and others who did not observe the plaintiff at the time corroborate them in other respects. The testimony of these witnesses all tends to show that the plaintiff was not shoved from the car, and that he was holding himself in place on the outside of the car, at the front, in a position indicating an endeavor to obtain a ride without being discovered by the conductor or motorman. The plaintiff, however, denied that he occupied this position—and in this he was corroborated by the two witnesses as stated—or was stealing a ride. The court on this point instructed the jury that:

"If the boy, as is claimed, sought to get a free ride in the manner described and claimed by defendant's witnesses, he cannot, as matter of law, recover anything whatever; and if you should reach the conclusion that the accident happened by the boy attempting to steal a ride, as has been described, it will be your duty to find a verdict for the defendant."

It is impossible to reconcile the testimony of the plaintiff and his witnesses with that of the witnesses called by the defendant. The case thus resolves itself into a question of credibility of witnesses. Although the number of witnesses called by the defendant exceeds

those called by the plaintiff, common knowledge and experience show no inherent improbability in the version given by either, and the jury were in a better position to judge of their credibility than is an appellate court. I am therefore of opinion, that the verdict should not be disturbed as against the weight of evidence.

The motorman testified that he was familiar with the rules of the company, prescribing who should eject passengers or others from cars, and that under these rules the motorman had nothing to do with putting off passengers; that the motorman's duties were "to keep both front gates shut, and allow no passengers on the front"; and that "the conductor had charge of the people on the car"; and, in answer to a question as to whether the motorman had charge of starting, running, and stopping the car, he said, "The motorman had charge of the front of the car." The conductor, in answer to the question as to who was authorized, under the rules of the company, to put off passengers or others, testified that this was "in the conductor's management." The theory upon which the court submitted the case to the jury, in the event that they found that the plaintiff had been shoved from the car by the motorman, was that the defendant would be liable if the motorman ejected him in such manner as to subject him to unnecessary danger, but that, unless the motorman acted in an improper manner, the defendant was entitled to a verdict. The case appears to have been submitted to the jury without objection upon either side upon the theory that the plaintiff went upon the car for the purpose of selling his papers, and was therefore a trespasser. The court, however, instructed the jury that the motorman, in ejecting the plaintiff, represented the defendant, and that, if the plaintiff was removed in an improper and dangerous manner, the defendant was liable. Counsel for the defendant requested the court to instruct the jury that:

"If you should find, as a matter of fact, that James Barry was thrown by the motorman from the front platform of the car to the street below, you cannot then render a verdict in behalf of the plaintiff unless you also find that the motorman was also acting within the scope of his employment when he made the alleged assault."

This request was refused, and the defend t duly excepted. The court, in the main charge, had in effect instructed the jury, as matter of law, that the motorman, in ejecting the plaintiff, represented the defendant. In denying this request, the court refused to leave it to the jury, as a question of fact, to determine whether the motorman was acting within the scope of his authority in doing what he did, and to instruct them that, if they found in the negative, the defendant would not be liable. I am of opinion that it was error to refuse this request. As I understand the decisions, the doctrine of Isaacs v. Third Ave. R. Co., 47 N. Y. 122, 7 Am. Rep. 418, in so far as it holds that a common carrier is not liable to a passenger for an injury willfully or maliciously inflicted by the conductor or any other person employed by the carrier in the performance of its contract duty of transporting the passenger, has been overruled, and the rule now is that, as matter of law, the carrier is responsible for any malicious or willful injury inflicted upon a passenger by the con-

ductor or any other person employed by the carrier in the course of the business of transporting the passenger. Stewart v. Brooklyn & Crosstown R. Co., 90 N. Y. 588, 43 Am. Rep. 185; Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; White v. 23d St. Ry. Co., 20 Wkly. Dig. 510; Schultz v. 3d Ave. Ry. Co., 89 N. Y. 242. In the case of a passenger willfully or maliciously injured by a conductor or trainman having some duty to perform concerning the transportation of the passenger, I understand that it is no longer necessary to submit the question to the jury as to whether the employé was acting within the scope of his employment, but that on account of the contract duty of safe transportation, and protection not only from the assaults of the carrier's own employés, but from the assaults of others, the carrier is liable as matter of law. This is the rule that was applied by the learned trial justice in the case at bar, but it is manifest that it was not applicable unless the plaintiff was a passenger. As has been seen, the case was submitted to the jury on the theory that he was not a passenger. He resided on Willis avenue, and was therefore going away from his home. His regular place for selling papers had been for a few days at this corner where he boarded the car. Upon the undisputed evidence, he went upon the car for the purpose of selling a paper to his customer, and remained upon it for the purpose of selling papers to others. The only reason he assigns for being upon the car was with a view to selling papers. He paid no fare, and, while it does not appear that he refused to pay fare, it does not, on the other hand, appear that he intended to become a passenger by paying his fare or traveling to any particular point. In these circumstances I am of opinion that he was not entitled to the rights of a passenger. Fleming v. Brooklyn City R. Co., 1 Abb. N. C. 433, affirmed 74 N. Y. 618; Baber v. Broadway, etc., Railroad, 10 Misc. Rep. 109, 30 N. Y. Supp. 931.

The precise question presented for decision is, therefore, whether, merely because the defendant is a carrier, it is liable, as a matter of law, for injuries willfully or maliciously inflicted upon persons found upon its cars who are not passengers. I am of opinion that this question must be answered in the negative. Where two inferences may be drawn from the facts and circumstances—one, that the servant, acting within the scope of his employment (that is, pursuant to an express or implied duty of removing trespassers, and moved to action by a sense of that duty), and the other, that the servant, actuated by a purpose and object of his own, uninfluenced by any desire to serve his master, and using his position and authority, if at all, as a mere form or pretext, inflicts a willful or malicious injury upon the trespasser—the question becomes one of fact, and must be submitted to the jury with instructions that in the former instance the master is liable for all damages, even though the servant exceeds his authority, departs from his instructions, or recklessly inflicts unnecessary injuries, and in the latter he is not liable at all. Craven v. Bloomingdale, 171 N. Y. 439, 64 N. E. 169; Collins v. Butler, 179 N. Y. 156, 71 N. E. 746; Rounds v. Delaware, Lack. & W. R. Co., 64 N. Y. 129, 21 Am. Rep. 597; Hoffman v.

N. Y. C. & H. R. R. Co., 87 N. Y. 25, 41 Am. Rep. 337; Cohen v. D. D. etc., Co., 69 N. Y. 170; Cox Shoe Mfg Co. v. Gorsline, 63 App. Div. 517, 71 N. Y. Supp. 619; Hill v. B. & N. Y. R. Co., 75 App. Div. 325, 78 N. Y. Supp. 134; Isenman v. Mills & Co., 38 App. Div. 472, 56 N. Y. Supp. 420; Fogarty v. Wanamaker, 60 App. Div. 433, 69 N. Y. Supp. 883; Levy v. Ely, 48 App. Div. 554, 62 N. Y. Supp. 855; Hewson v. St. Ry. Co., 95 App. Div. 112, 88 N. Y. Supp. 816. Of course, where the inference that he was not acting for. the master within the general scope of his authority is not justified, it becomes a question of law; and so, likewise, when there is no room for an inference that he was pursuing an independent purpose of his own, the master would be liable as matter of law. Sandles v. Levenson, 78 App. Div. 306, 79 N. Y. Supp. 959, affirmed 176 N. Y. 610, 68 N. E. 1124; Grimes v. Young, 51 App. Div. 239, 64 N. Y. Supp. 859; Kennedy v. White, 91 App. Div. 475, 86 N. Y. Supp. 852; Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392; Ochsenbein v. Shapley et al., 85 N. Y. 214; Scott v. Mayor, 27 App. Div. 240, 50 N. Y. Supp. 191.

In Girvin v. N. Y. C. & H. R. R. Co., 52 App. Div. 562, 65 N. Y. Supp. 299, affirmed 166 N. Y. 289, 59 N. E. 921, the opinion of the Court of Appeals seems to indicate that a brakeman, in assaulting a trespasser on a freight train, is acting within the scope of his authority, as matter of law, but that, if the assault be on the ground, he is acting without the scope of his authority as matter of law; and it was held that the question for the jury was whether the assault was commenced on the train, in which event the company would be liable, but otherwise not; and Mott v. Consumers' Ice Co., 73 N. Y. 543, is cited as stating the correct rule. The latter case, however, held that, where the defendant's driver drove against the plaintiff's carriage, it was a question for the jury whether, in so doing, he was acting within the scope of his employment, or departed therefrom for a purpose of his own; and Shea v. Sixth Ave. R. Co., 62 N. Y. 180, 20 Am. Rep. 480, is to the same effect. With the relationship of passenger eliminated, upon principle there can be no difference between the liability of a common carrier for injuries inflicted by its servants upon trespassers, and the liability of other corporations and individuals for the acts of their servants. In the case at bar, notwithstanding that the motorman had no duty to perform with respect to removing passengers or others, the jury might fairly infer from the evidence that he had implied, if not express, authority to keep passengers and others off the front platform, and this conferred implied authority to remove them. Hoffman v. N. Y. C. & H. R. R. Co., 87 N. Y. 25-31, 41 Am. Rep. 337. But it is not likely that he was authorized by his employer to remove either a passenger or a trespasser by shoving him from the car while it was in motion. Notwithstanding this, however, the company would be responsible for his act if the jury were satisfied from the evidence that the purpose and object of the motorman in so doing was the performance of a supposed obligation that he owed his employer, rather than the gratification of some personal feeling or motive; but, on the evidence, this was a question of fact. The

circumstance that the car was in rapid motion, and that the motorman made a lunge for the plaintiff the moment he discovered him, without inquiring whether he was a passenger, or ordering him inside or off, in the light of the fact that the plaintiff had a bundle of papers under his arm, and was offering them for sale, might have justified the jury in finding that the motorman was moved by a sudden impulse to punish the plaintiff for peddling papers on the car, or attempting to steal a ride without being discovered, or some other malicious motive, uninfluenced by any duty he owed the defendant.

The judgment and order, therefore, should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except PATTERSON, J., who dissents.