ISAAC MARKS *vs.* JAMES H. BAKER and another.

July 25, 1881.

**Libel—Privileged Communication.**—The rule is that a communication, made in good faith, upon any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, public, or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice which the law draws from defamatory words is rebutted, and the *onus* of proving actual malice is cast upon the person claiming to have been defamed. That the subject-matter of the communication is one of public interest in the community of which the parties to the communication are members, is sufficient as respects interest to confer the privilege.

**Same—Newspaper Charge against Candidate for Office.**—The plaintiff was treasurer of the city of Mankato, and a candidate for re-election. The defendants, being residents and tax-payers of said city, published a communication in a newspaper published in said city, of which they were editors and proprietors, charging or insinuating that the plaintiff had, as appeared by certain official reports, failed to account for city funds which had come into his hands as such treasurer, and that (as the plaintiff claimed) he had embezzled a portion of such funds. *Held*, that the publication, if made in good faith, was privileged.

**Same—Evidence of Belief and Intent of Defendants.**—One of the defendants, having been called as a witness for the defence, was permitted to testify (plaintiff objecting) to his belief in the truth of a certain report referred to in the communication published, (being one of the reports upon which the charge or insinuation therein purported to be based,) and also as to his object and purpose and intent in publishing the communication. *Held*, (1.) That, with reference to the defence of privileged communication, the inquiries were all admissible upon the question of good faith. (2.) That in case of failure to establish the defence of privileged communication, they were admissible under Gen. St. 1878, *c.* 66, § 116, to show mitigating circumstances in reduction of punitive damages.

**Same—Defamatory Publication.**—A defamatory publication is one which is false, and calculated to bring the person defamed into disrepute, but it it not necessarily malicious.

Appeal by plaintiff from a judgment of the district court for Blue Earth county, *Dickinson,* J., presiding.

. *Franklin H. Waite,* for appellant.

*Pfau & Baker,* for respondents.

BERRY, J.* This is an action for libel. The plaintiff was, at the times hereinafter mentioned, treasurer of the city of Mankato, and, as such, custodian of the moneys, and from April 1 to 6, 1880, a candidate for re-election to the same office, at an election fixed for the latter day. The defendants were residents and tax-payers of the city, and publishers thereat of the Mankato *Free Press,* a weekly newspaper, and as such they published therein, on April 2, 1880, the article complained of, in which, as the plaintiff claims in his complaint, they charged and intended to charge the defendant as treasurer with embezzling city funds. It is alleged in the complaint that the matter charged as libellous was of and concerning the plaintiff in his office—that it was false and defamatory, and that the publication was malicious. The answer denies malice, all intent to injure or defame plaintiff, any intention on defendants' part to charge him with embezzlement, and alleges that defendants published the article complained of, as a communication, solely for the purpose of calling the attention of the public to the matter therein referred to, viz., to a discrepancy in certain official reports tending to show that the plaintiff had failed to charge himself with the full amount of city funds which he had received from the county treasury, and with the view of obtaining an inquiry as to the cause of such discrepancy. The answer further alleges that "the publication was made in good faith; * * that defendants believed that there was reasonable cause for the publication;" and "that they were then and there discharging a sacred and moral obligation as * * editors and publishers." The reply puts these allegations of the answer in issue. Upon the trial it was admitted that, notwithstanding the discrepancy, (which in fact existed,) the plaintiff had accounted for the full sum received by him as city treasurer from the county treasurer, so that the defendants' charge or insinuation to the contrary was false.

*Dickinson, J., having tried the case in the district court, took no part in this decision.

Defendant Baker, having been called for the defence, was asked the questions following, to which he made answers as follows, all against the objection and exception of the plaintiff:

(1) "Did you believe the report of the city recorder to be true? *Answer.* I did believe it to be true. (This report was that from which, as defendants in the alleged libel charged or insinuated, it appeared that plaintiff had failed to account for all the money received by him from the county treasurer.)

(2) "What was your object in publishing the article? *Answer.* I published it for the general public interest.

(3) "Did you have any other object in publishing the article? *Answer.* I did not.

(4) "You have stated that you had no other purpose than doing a public duty in publishing the article. I want to know what your object was,—to charge somebody with a crime, or whether you had some other object? *Answer.* To draw attention to the discrepancy of the two reports. I had seen what purported to be the official report of the county auditor, and I had seen the city recorder's report; and the county auditor's showed that Marks, as city treasurer, had received from the county, during the fiscal year, $115.02 more than the city recorder's report showed that he had received from the county for the same time. (These are the two reports between which the discrepancy was charged to exist.)

(5) "Did you, by publishing the article, intend to charge the plaintiff with embezzling any sum whatever? *Answer.* I did not."

The defence set up in the answer is, in effect, that the publication complained of is a privileged communication.

The rule is that a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice which the law draws from defamatory words is rebutted, and the *onus* of proving actual malice is cast upon the person claiming to have been defamed. *Toogood* v. *Spyring*, 1 Crompton, M. & R. 181; 2 Addison on Torts, § 1091; *Harrison* v. *Bush*, 5 E. & B. 344; Moak's

Underhill on Torts, 146; *Quinn* v. *Scott*, 22 Minn. 456.) That the subject-matter of the communication is one of public interest in the community of which the parties to the communication are members, is sufficient, as respects interest, to confer the privilege. *Purcell* v. *Sowler*, L. R. 2 C. P. Div. 215; *Palmer* v. *City of Concord*, 48 N. H. 211; Cooley on Torts, 217. The subject-matter of the communication in the case at bar was one of public interest in the city of Mankato, where the publication was made, and one in which the defendants had an interest as residents and tax-payers of the city. It was, therefore, a privileged communication, within the rule mentioned, if made in good faith. *Quinn* v. *Scott, supra.*

To the question of good faith, the first four interrogatories and their answers were directly pertinent. The first of the four and its answer went straight to an essential of good faith, to wit, the defendants' honesty in the publication of the alleged libel. The other three interrogatories and answers went to the object or motive of defendants in making the publication, and they also, in connection with the first, bore directly upon the matter of good faith. If the defendants published the article believing it to be true, and with a good motive or for a good object—as their answers to these interrogatories tended to show—then the publication was made in good faith; that is to say, honestly, and without any intention to do wrong, and with an affirmative intention to do that which, in view of the fact that the subject-matter of the article published was one of public interest, was right, and in a certain sense a duty. Townshend on Slander and Libel, § 204; *Smith* v. *Higgins*, 16 Gray, 251; *Bush* v. *Prosser*, 11 N. Y. 347.

Again, in case defendants failed to establish the full defence of privileged communication, all of the questions and answers were admissible as showing mitigating circumstances, under Gen. St. 1878, c. 66, § 116, which provides that, in an action for libel or slander, "the defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and whether he proves the justification or not, he may give in evidence the mitigating circumstances." The circumstances embraced in the five questions and answers were sufficiently pleaded in defendants' answer to the complaint, and they

were therefore provable in mitigation of any punitive damages, as showing the absence of any actual malice in making the publication. *Hewitt* v. *Pioneer Press Co.*, 23 Minn. 178; *Smith* v. *Higgins, supra; Bush* v. *Prosser, supra.*

That portion of the charge of the trial court which is presented in the return, is in accordance with the views above expressed. The word "defamatory," occurring therein, does not, in its ordinary and proper signification, include, as the plaintiff's counsel suggests, the element of malice. A defamatory publication is one which is false, and calculated to bring the person defamed into disrepute, but it is not necessarily malicious. Cooley on Torts, 193.

Judgment affirmed.