GRIMES v. YOUNG et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

MASTER AND SERVANT—ACTION OF SERVANT—OUTSIDE SCOPE OF EMPLOYMENT —RECOVERY OF MASTER.

Defendants employed a night watchman, furnishing him with a pistol, with instructions to use it only if the property was in danger or in self-defense, and then to shoot in the air. Plaintiff's intestate was bathing near defendants' works, and after leaving the water, and while standing on the public wharf, he was shot by defendants' watchman without the slightest provocation. Plaintiff's intestate had made no attempt to trespass on defendants' property. Held that, as the crime was committed when the servant was acting outside the scope of his employment, there could be no recovery against defendants.

Appeal from special term, Queens county.

Action by Thomas Grimes, administrator of James Grimes, against Nicholas P. Young and another. From a judgment dismissing complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

Stephen M. Hoye, for appellant.
Daniel P. Hays, for respondents.

WILLARD BARTLETT, J. Between 5 and 6 o'clock in the afternoon of July 10, 1897, on a public wharf at the foot of Harris avenue,

in Long Island City, a lad named James Grimes was killed by a shot from a pistol fired by one John Buck. For about four months prior to the shooting, Buck had been acting as a night watchman for the firm of Young & Metzner, whose bagging works were situated on Vernon avenue, between Harris avenue and Bodine street. The object of the present action is to hold the members of this firm civilly responsible for the atrocious crime which Buck committed in wantonly killing the Grimes boy. The learned judge before whom the case was tried dismissed the complaint at the close of the plaintiff's evidence, and the plaintiff has appealed to this court, insisting that he was improperly nonsuited.

It appears that Buck had succeeded a man named Loew as night watchman for the defendants. A pistol had been furnished to Loew by the defendants, one of whom had cautioned him to use it simply for self-defense, and then to shoot in the air and frighten away anybody. When Buck took Loew's place, Loew gave him the revolver, "and told him that if ever there was any danger, that if the property was in danger, or if he was in danger, he was to shoot in the air." According to Loew's testimony, he gave this instruction to Buck by the express direction of Mr. Metzner, one of the defendants. Taking all the evidence on this subject together, we have the case of a watchman armed with a revolver by his employers, and authorized by them to fire with it into the air in order to frighten away intruders, for purposes of self-defense, or to protect the property which he was employed to watch. If, under these circumstances, it appeared that the watchman, either to defend himself or to protect the property of his employers, had fired at a person and killed him, instead of firing into the air according to the direction of his employer, it might very well be that the master would be responsible for the wrongful act of the servant. Such a question of liability would be presented if Buck had shot Grimes while Buck was on duty acting as a watchman for the defendants, and was engaged in an endeavor to shield their property or his own person from some attack on the part of the lad. If he had aimed at Grimes and fired and killed him under such circumstances, although in disregard of the defendants' directions to fire in the air, his employers might be chargeable with his act under the well-established doctrine that the master may be held responsible for the acts of the servant within the general scope of his employment while engaged in the master's business, even though the servant's act be negligent, wanton, or willful. Mott v. Ice Co., 73 N. Y. 543; Ochsenbein v. Shapley, 85 N. Y. 214; Burns v. Railroad Co., 4 App. Div. 426, 38 N. Y. Supp. 856; Higgins v. Turnpike Co., 46 N. Y. 23. The wantonness or willfulness of an assault makes no difference if the act was done in the scope of the master's employment. Meehan v. Morewood, 52 Hun, 566, 5 N. Y. Supp. 710, affirmed in 126 N. Y. 667, 27 N. E. 854. "But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible." Mott v. Ice Co., supra. It seems to us that the facts of the present case bring it within the rule thus stated. It is not clear from the

evidence that when Buck fired the fatal shot he had gone on duty for the night as the defendants' watchman; but, whether he had or not, it is manifest that his assault upon Grimes was an act wholly outside the scope of his employment, and having no connection whatever therewith. The Grimes boy was not upon the premises of the defendants, nor had he made any attempt to trespass upon their property, or interfere therewith. He had been bathing in the river with a number of companions, and after leaving the water, and while standing upon the public wharf, was shot down by Buck without the slightest provocation. Indeed, the testimony of one of the witnesses is to the effect that Buck was unarmed when he first saw the boy, and went away to get the revolver with which he subsequently did the shooting. It is difficult to find language strong enough to justly characterize Buck's conduct, but it would be unwarrantably extending the doctrine of a master's liability for the acts of his servant to hold that Buck's employers were in any wise responsible for his crime.

The nonsuit was right, and the judgment should therefore be affirmed, with costs. All concur.