JAMES A. SANDLES, an Infant, by JOHN SANDLES, his Guardian ad Litem, Appellant, *v.* MORRIS LEVENSON, Respondent.

*Watchman shooting a boy on a shed adjacent to the premises in his charge — when it is done neither in self-defense nor in protection of his employer's property, and consequently not within the scope of his employment.*

In an action brought to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant's watchman or through an alleged assault committed by the defendant's watchman, it appeared that the plaintiff, an infant, with a number of companions, was playing ball in one of the streets in the city of New York and that the ball was driven into the defendant's yard, which was inclosed by a high fence; that one of the plaintiff's companions went upon an adjoining shed for the purpose of getting into the yard and recovering the ball; that as he stepped upon a ladder which led down into the yard, the defendant's watchman, who was stationed in the yard, pulled the ladder from under him, causing him to fall to the ground, where he was immediately seized by the watchman; that, while holding the boy, the watchman drew a pistol and, pointing it in the air, discharged it; that the bullet struck the plaintiff, who was standing upon a shed which did not belong to the defendant, although it was contiguous to his property.

The pistol with which the shooting was done was either taken by the watchman from a drawer in the defendant's building or was furnished to him by the defendant. It did not appear that the watchman knew or had any reason to believe, at the time the pistol was discharged, that the plaintiff was on the shed, or whether the pistol was discharged by accident or by design.

*Held,* that the complaint was properly dismissed;

That there was no evidence which would justify a finding that the watchman discharged the pistol in self-defense or for the purpose of protecting the defendant's property, and that, unless he did so, his act in discharging the pistol was not within the scope of his employment.

Ingraham and Hatch, JJ., dissented.

Appeal by the plaintiff, James A. Sandles, an infant, by John Sandles, his guardian ad litem, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of January, 1902, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case upon a trial at the New York Trial Term.

*Sumner B. Stiles,* for the appellant.

*Moses Feltenstein,* for the respondent.

McLaughlin, J. :

Action to recover damages for an injury sustained by the plaintiff by reason of an alleged assault by, or the negligence of, defendant's servant. The complaint was dismissed at the close of plaintiff's case, and from the judgment thereafter entered he has appealed.

The facts, so far as they are material, are as follows: On the 26th of May, 1901, the plaintiff, seventeen years of age, with several other boys, was playing ball in one of the streets of the city of New York, and the ball with which they were playing was driven into defendant's yard, which was inclosed by a high fence; the defendant had a watchman in the yard to look after it and the property in the building immediately adjoining; after the ball had been driven into the yard the plaintiff, or one of his companions, called to the watchman to throw it out; he threw out a ball, but it was not the one which belonged to the boys, and thereupon one of them, a boy by the name of Gilligan, went upon an adjoining shed, so that he could get into the yard; he stepped upon a ladder for the purpose of descending into the yard, and as he did so the watchman pulled the ladder from under him, he fell to the ground and was immediately seized by the watchman, who, while holding him in this position, drew a pistol, and pointing it in the air, either by accident or design, discharged it, and the bullet therefrom struck the plaintiff

in the leg. It is to recover damages for the injury thus inflicted that this action was brought.

The pistol the watchman took from a drawer in defendant's building, or else it was furnished to him by the defendant. The plaintiff, at the time he was injured, was standing upon a shed, but it did not belong to the defendant, although it was near his property. There was no evidence to the effect that the watchman knew, or had any reason to believe, at the time the pistol was discharged that the plaintiff was upon the shed; on the contrary, the uncontradicted evidence was to the effect that the pistol was pointed in the air as soon as the Gilligan boy was seized and before the plaintiff went upon the shed.

This being the condition of the testimony at the close of plaintiff's case, I am of the opinion that the complaint was properly dismissed. The facts, it seems to me, brought the case clearly within the rule laid down in *Grimes* v. *Young* (51 App. Div. 239), and what the court there said in affirming a nonsuit is as applicable to this case as it was to that, viz.: "Taking all the evidence on this subject together, we have the case of a watchman armed with a revolver by his employers and authorized by them to fire with it into the air in order to frighten away intruders, for purposes of self-defense or to protect the property which he was employed to watch. If, under these circumstances, it appeared that the watchman, either to defend himself or to protect the property of his employers, had fired at a person and killed him instead of firing into the air, * * * it might very well be that the master would be responsible for the wrongful act of the servant." Here, the plaintiff was not upon the defendant's premises, nor did the watchman even know that he was endeavoring to go upon them. Therefore, there was nothing which would have justified a finding that the watchman, when he discharged the pistol, did so for the purpose of self-defense or for the protection of the defendant's property. It is true he was, at the time, in the employ of the defendant, but I take it that no one would contend that if the watchman, to gratify his own curiosity or for pleasure, had fired the pistol in the air and some one had been injured, defendant could have been held liable. The discharge of this pistol was either by accident or else, so far as appears, for some purpose not disclosed on the part of the watchman. It certainly

was not for the purpose of preventing the plaintiff entering the yard or interfering with or injuring the defendant's property, because, as already indicated, the watchman did not even know, at the time it was discharged, that the plaintiff was upon the shed or intended to go upon it. Where a servant goes outside of his employment, and without regard to his service, acts maliciously, or, in order to accomplish some purpose of his own, wantonly commits a trespass or causes damage to another, the master is not responsible. (*Mott v. Consumers' Ice Co.*, 73 N. Y. 543.) This is the general rule, and, applying it to the facts in this case, it seems to me it must be held that the watchman in discharging the pistol was not acting within the scope of his employment.

The judgment is right and should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred; INGRAHAM and HACTH, JJ., dissented.

INGRAHAM, J. (dissenting):

I am of opinion that this judgment should be reversed upon the ground that a question was presented as to whether the watchman negligently fired the shot which resulted in the injury to the plaintiff. The defendant's yard was in a thickly inhabited section of the city of New York, and I think no one is justified in such a locality in firing a pistol in such a direction that any one upon adjoining property or in the street can be injured; and where a pistol is fired in such a locality which results in the injury of a person upon adjoining property there is at least presented a question as to whether the person firing the pistol was negligent and thus impose a liability for any injury caused thereby. I agree with Mr. Justice HATCH that there was a question of fact as to whether the watchman was acting within the scope of his authority as an employee of the defendant; and that if he was, and the jury should find that it was negligence for him to fire this pistol under the circumstances, the defendant would be liable. I should hesitate in voting for reversal of this judgment upon the ground that there was evidence to justify the jury in finding that the watchman saw the plaintiff and fired at him; but the fact that a person upon adjoining property was struck by a bullet coming from a pistol fired from the defendant's property by either the defendant or one in his employ acting in the discharge

of the duty imposed upon him, is of itself evidence to require the submission of the question to the jury, and then upon the whole case it is a question for them as to whether the act was a negligent one for which the defendant was liable.

HATCH, J. (dissenting):

The complaint in this action contains two counts, one for assault and battery claimed to have been committed upon the person of the plaintiff by the watchman employed by the defendant in and about his business. The second cause of action charges negligence and is based upon the same facts. The court ruled upon the trial that the proof was insufficient to base a finding of negligence and dismissed the complaint for that reason, and, upon the question of assault, the court concluded that the action could not be maintained for the reason that at the time of its commission the watchman was not acting in the scope of his employment, or in defense of his master's property. The case proved in its essential features is one to recover damages for negligence.

It appeared upon the trial that the plaintiff, an infant, was playing ball with other boys near the premises of the defendant, where he carried on the business of manufacturing gas fixtures. The premises were inclosed by a fence. In the course of the play the ball was knocked over the fence upon the defendant's premises. The watchman threw out a ball from the premises to the boys, but not the one which had been knocked over. Thereupon one of the boys named Gilligan went upon the shed adjoining the premises of the defendant for the purpose, as he claims, of getting the ball which belonged to them. There was a ladder furnishing access from this shed into the premises. As Gilligan got one foot upon the ladder the watchman pulled it from under him and he fell to the ground, a distance of about six feet. When he had fallen to the ground the watchman stood over him and pulled out a pistol. The plaintiff, hearing the noise of Gilligan's fall, went upon the shed and walked over to the end towards the defendant's premises, following the same course that Gilligan had taken. He reached a point upon the shed near where the ladder had been placed, which brought him directly over the spot where the watchman stood, distant about four or five feet. When the plaintiff arrived at this point the watchman

had the pistol in his hand and pointed directly towards the plaintiff, and almost immediately fired the same, the bullet from which struck the plaintiff in the knee. This shot was followed by another, which did not take effect. The plaintiff exclaimed after the first shot, "I am shot," and the second shot followed this exclamation. The watchman then went into the office upon the premises and telephoned to the police that he was being robbed. The watchman testified that he was working on the day in question, which was Sunday, taking care of the property; that the defendant had given him the revolver and that he had taken it from his desk.

These facts are fairly to be drawn from the testimony, and in consideration of the evidence given by the plaintiff upon this appeal he is entitled to the most favorable inferences of which the facts admit. The rule of law is well settled that the master, for the acts of the servant within the general scope of his employment, and while engaged in the business with a view to the furtherance of his interests, is responsible therefor, whether the act be done negligently, wantonly or even willfully. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Girvin* v. *N. Y. C. & H. R. R. R. Co.*, 166 id. 289.)

In the latter case it was held that where a brakeman pursued the plaintiff, who was engaged in stealing a ride upon one of the defendant's freight trains, upon which the brakeman was employed, and the plaintiff jumped from the train, was immediately followed by the brakeman, who struck him before he reached the ground and broke his leg, and then kicked and struck him, a case was presented for the jury as to whether the acts of the brakeman were within the scope of his employment, rendering the defendant liable therefor.

Such has been the rule announced in many cases. (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Montgomery* v. *Sartirano*, 16 App. Div. 95.)

There can be no doubt in this case but that the jury would have been authorized to find that the watchman was engaged in the course of his employment in caring for the property of the defendant; that the defendant had furnished him the pistol, to be used if the watchman deemed it necessary in the performance of his duty. Were the jury authorized to find that in what the watchman did he acted for the defendant in furtherance of his interests? The first

boy had gone over this shed to the ladder. Of that fact the watchman was aware, because he had discovered and pulled ·the ladder from under him. The second boy passed over the same shed in the same manner towards the same point, in close proximity to the watchman. When he arrived within four or five feet of the point where the watchman stood, the latter fired the shot which inflicted the injuries, and immediately thereafter communicated to the police that he was being robbed. There is nothing in this record to show that, at the time the shot was fired, the plaintiff was not plainly visible to the watchman. He stood within four or five feet of him. The watchman had the pistol pointed directly at him ; the trespass by the first boy had been by the same ladder, and it seems clear, therefore, that the jury would be justified in drawing the inference that the watchman was aware of the presence and position of the plaintiff; that he fired the shot under the impression that the plaintiff intended to commit a trespass and deemed such act necessary in the discharge of his duties as watchman of the defendant's property. Under such circumstances, within the rule of the authorities which we have cited, a case was presented which required its submission to the jury. It is said in answer, however, that this case is controlled by the decision of *Grimes* v. *Young* (51 App. Div. 239). An examination of that case discloses that it recognized to the fullest extent the rule of law to which we have called attention. The facts of that case are entirely different from those which the jury would have been authorized to find in this case, in consequence of which it is clearly distinguishable and becomes an authority in favor of the plaintiff. It therein appeared that the boy who was shot had been bathing in the river near the defendant's property with a number of his companions, and, after leaving the water and while standing upon a public wharf, was shot down by the watchman without the slightest provocation. There was in that case an entire absence of testimony tending to show that at the time when the shot was fired a trespass was being committed or attempted ; on the contrary, the boy was not approaching the property of the defendant; was standing in a public place, and no fact appeared authorizing the inference that he even contemplated a trespass upon the defendant's property. In addition to this, it was by no means made clear that the person firing the shot had entered upon his

duties as a watchman.   From all that did appear it was evident that the shooting was a wanton, willful act, disconnected from any employment or duty devolved upon such person in the course of his employment.   The court, therefore, properly applied the rule that the defendant was not liable for such an act.

The facts of the present case take it out of the operation of such rule, for here the inference is fairly presented that what the watchman did was done in the course of his employment; was clearly within its scope and that he deemed the act of firing the pistol necessary for the protection of the property which he was charged with protecting.   A case was, therefore, made which required its submission to the jury.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment affirmed, with costs.