(109 App. Div. 288.)

## TWAY v. SALVIN.

(Supreme Court, Appellate Division, Second Department. November 24, 1905.)

1. MASTER AND SERVANT—LIABILITY FOR INJURY TO THIRD PERSON.

The proprietor of a saloon, whose servant, acting in the scope of his authority, willfully puts a drug in a drink served a customer, is liable for an injury to the customer, which is the proximate result thereof.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1230.]

2. SAME—EVIDENCE OF RELATIONSHIP—SILENCE.

Evidence, in an action against one as proprietor of a saloon for injury to plaintiff by a servant therein serving him with a drugged drink that plaintiff's companion, going to the saloon with an officer to make inquiries as to women claimed to have there stolen his jewelry, was introduced by the officer to defendant as the proprietor, and that defendant did not disclaim such relationship to the place, though testifying at the trial that he was the proprietor's night cashier, and afterwards secured and returned the jewelry, is not sufficient to show that he was the proprietor.

Hirschberg, P. J., and Bartlett, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Joseph W. Tway against Paul Salvin. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Samuel Solomon (Maxwell S. Harris, on the brief), for appellant.
John S. Griffith, for respondent.

JENKS, J. The plaintiff complains that as a customer in the defendant's liquor saloon he was served with drugged drink with intent to make him semiunconscious, that such drink was mixed and served by the defendant's servant at defendant's instigation, and that after leaving the saloon, but while under the influence of the drug, he fell and sustained bodily injury. There was no proof that the defendant instigated the drugging or had a hand in it, but the case was submitted to the jury on the theory that he might be held if a master. The jury returned a verdict of $1,500, and the defendant appeals.

I think that as the evidence was not sufficient to warrant a finding that the defendant was the keeper of the saloon, there must be a new trial. Consequently I confine my discussion of the facts to this issue. But the plaintiff must not infer that I consider that the facts adduced upon the other issues are sufficient to sustain the verdict, but he may conclude only that in my opinion the points of law made against the existence of any cause of action against the keeper of the saloon are not sound. A master is liable for an assault by a servant committed while acting in the scope of his authority, even though it be negligent, wanton, or willful. Grimes v. Young, 51 App. Div. 239, 64 N. Y. Supp. 859. I think, therefore, that if a servant of the keeper, while acting in the scope of his authority, served a drugged drink to his master's customer in response to an order for a beverage which the master had on sale, the latter may be held responsible in damages for any personal injury to the customer which is the natural and probable consequence of this wrongful act and which proximately results from it. This question of the relation of cause and consequence must generally be determined by the jury (Ehrgott v. Mayor, etc., of City of N. Y., 96 N. Y. 264, 281, 48 Am. Rep. 622; Putnam v. Broadway and Seventh Ave. R. R. Co., 55 N. Y. 108, 14 Am. Rep. 190), and I think that in this case it cannot

be determined as matter of law. See Harrison v. Berkley (S. C.) 47 Am. Dec. 578, 584; Vanderburgh v. Truax, 4 Denio, 464, 47 Am. Dec. 268.

The only direct proof that the defendant kept this place is in the evidence of the companion of the plaintiff, who asserts that he was likewise drugged into oblivion, to find himself many hours afterwards in the street, without his pencils and money. Three days thereafter he returned to this saloon with Rynders, a detective sergeant assigned from police headquarters, and saw the defendant there. On the evening of the occurrence, the plaintiff and this witness were accosted in this saloon by two women, frequenters of the place, and thereafter sat with them at a table drinking. It was supposed that these women were the larceners of the effects of the witness, and the purpose of this visit was to regain the property and to find the thieves. The witness testifies that on this visit he "asked to be introduced to the proprietor," and that the detective introduced him to the defendant, saying, "This is Mr. Salvin, the proprietor of the place," and that defendant did not then deny the proprietorship. This is all of the direct evidence for the plaintiff upon this issue. It must be weighed as an omission to deny a description. The surrounding circumstances are for the scales. The purpose of this visit was not to fasten the proprietorship upon any one, but to recover the effects of the witness supposed to have been stolen by these women. There was not even the isolated statement that the defendant was the proprietor. Introductions are often incoherent, often inaccurate, and the terms thereof are often unnoticed. The defendant testifies that he was the night cashier, in the employ of Maurel, the proprietor, and exercised some authority under him. Even if he noticed the terms of the introduction, no reason was then apparent for correction or disavowal. Even after he had learned the purpose of the visit, he may have thought that, inasmuch as he on the evening in question was an eyewitness of the occurrence, he could represent the proprietor. The detective does not recall the making of any introduction. He testifies he did not know, and during his duties in this district he had never heard, that the defendant kept this place. If the witness had inquired for the proprietor from some one attached to the place, and the defendant had then been introduced, not by an ignorant outsider, and had accepted the description, or even if he had thus been introduced by the outsider when it was apparent that the quest was for the proprietor, or even if it had then or perhaps thereafter appeared that the question of this proprietorship was involved, then the silence of the defendant would have made much more against him. But the witness says:

"Nothing was said at that time about the ownership of the place by Mr. Salvin, except that I asked to be introduced to the proprietor, and Mr. Rynders himself introduced me."

Referring to the introduction, the detective testifies:

"I did not bother my head about it at all. What was in my head was getting the jewelry back and the two women who were supposed to have taken it."

The defendant testifies that his present business is night clerk in a barroom and café, and that as night cashier he was employed by the owner, Frank Maurel, whom he had attempted to subpœna, beginning in the week before the trial; that he supposed, as he knew Maurel's residence, he would find no difficulty in his quest, but that he had ascertained that Maurel had gone to St. Louis, where he could not locate him. He further testified that, although the case was answered "Ready" that morning, he could not help himself. He denied that the excise license was in his name, and appealed to the records of the excise board to sustain him. There is some indirect evidence whose probative force is weakened by the fact that the defendant was an employé of a superior grade. For his presence, or his giving orders to waiters and the like, were entirely consistent with his description of his position and his assertion that he had some authority when his "boss" was absent. Indeed, some of the evidence corroborates the defendant. Thus the plaintiff testifies:

"At the end of the bar where there is a little desk towards the room I went into. He [the defendant] was giving orders to some one there."

The companion says:

"He was in charge of the business, giving orders and directions and everything else; had charge of the cash accounts—cashier."

It is said that the defendant returned the jewelry. If he stole it or was a party to the theft, that does not establish or tend to establish that he owned the saloon; for he was as free to commit the theft as cashier as proprietor. If, as he testifies, he found the women, the supposed thieves, and compelled them under threats of prosecution to return the jewelry to him, that he might restore it to the owner, there is no reason for the inference that he must have regained the jewelry as proprietor, any more than as cashier. The salient fact was that he was present about his business on the night in question, saw the women in company with the men, knew the women, and could identify them. His action in recovery of the jewelry did not indicate his proprietorship. The matter was in the hands of the police. There was then no question of his liability as the proprietor. He had admitted to the detective that he knew the women and had promised to identify them. As an individual he was constrained either to aid the authorities or to abet the criminals.

If the defendant was the proprietor, and not an employé, more satisfactory evidence of it is not far to seek. The tenure of the drinking place, the state regulations of the traffic, in addition to other circumstances more or less easy of ascertainment, might afford proof to warrant a finding of the fact.

Judgment and order reversed, and new trial granted; costs to abide the event.

RICH and MILLER, JJ., concur. HIRSCHBERG, P. J., and BARTLETT, J., dissent.