WILLIAM H. FRIEDELL v. BLAKELY PRINTING COMPANY AND OTHERS.[1]

May 15, 1925.

No. 24,029.

**When communication is privileged.**
1. A communication made in good faith upon any subject matter in which the party communicating has an interest or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged.

**Publication concerning candidate for public office conditionally privileged.**
2. The publication of an article concerning one who is a candidate for public office relative to his candidacy is one of public interest and is conditionally privileged. Such privilege destroys the element of malice incident to ordinary libel and casts the burden upon the plaintiff to show that the publishers were actuated by ill will or improper motive or that they acted causelessly and wantonly to the injury of the plaintiff.

**When proof of actual malice is necessary.**
3. In the publication of conditional or qualified privileged matter the plaintiff must prove actual malice before there can be a recovery.

[1]Reported in 203 N. W. 974.

**When qualified privilege is lost by knowledge of its falsity.**

4. The publication loses its qualified privilege if the statement or part of it is in fact false and knowledge of the falsity is brought home to the person making it.

**Same.**

5. Likewise if the publication is malicious the occasion gives no protection.

**Good faith and absence of malice.**

6. Good faith and absence of malice is a good standard where there is a qualified privilege.

**What is proof of actual malice.**

7. Proof of actual malice in such cases consists in showing bad faith in the defendant. Actual malice may appear from a showing that the occasion was made use of as a camouflage behind which to hide for the purpose of maligning a candidate for office in a way not justified by the facts; it may be made to appear by proving that the publisher knows the statements he made were false; it may be proved by extrinsic evidence of personal ill feeling or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of publication and other matter in excess of the privilege.

**Ignorance of official of defendant company protected him.**

8. Plaintiff sued a corporation, which published a newspaper, and also its president and secretary. The proof showed that the president was away from the business and had no knowledge of the article prior to its publication. The court properly directed a verdict in his favor.

**Fair comment on privileged public record privileged.**

9. A fair and substantially accurate comment on an absolutely privileged public record or report is privileged.

**When plaintiff on rebuttal cannot prove report to be untrue.**

10. When the defense is qualified privilege and the issue is good faith and absence of malice, plaintiff cannot under the name of rebuttal prove the contents of the report to be untrue. The rule is not changed by the fact that such report may tend to discredit plaintiff in the eyes of the jury.

**When publishing company is liable for libel and when not liable.**

11. A corporation, publishing a newspaper, is liable in an action for libel when it publishes a qualified privileged article which is written and published by the agent in charge, in the course of his employment, with malice, even though he does this without the knowledge of the employer as to the existence of such malice; but it is not liable for the publication of such article which is written, by an obscure employe, in the course of his employment, with malice unknown to the agency responsible for the publication.

1. See Libel and Slander, 36 C. J. p. 1219, § 167; p. 1241, § 205.
2. See Libel and Slander, 36 C. J. p. 1220, § 167; p. 1221, § 168; p. 1263, § 244; p. 1286, § 292.
3. See Libel and Slander, 36 C. J. p. 1222, § 168.
4. See Libel and Slander, 36 C. J. p. 1222, § 168.
5. See Libel and Slander, 36 C. J. p. 1219, § 167.
6. See Libel and Slander, 36 C. J. p. 1219, § 167.
7. See Libel and Slander, 36 C. J. p. 83, §§ 495, 496.
8. See Libel and Slander, 36 C. J. p. 15, § 303.
9. See Libel and Slander, 36 C. J. p. 1275, § 265½.
10. See Libel and Slander, 36 C. J. p. 55, § 416; Trial, 38 Cyc. p. 1352 (1926 Anno).
11. See Corporations, 14a C. J. p. 776, § 2848.

2. See note in L. R. A. 1918E, 43.
8. See notes in 10 L. R. A. (N. S.) 332, L. R. A. 1918F, 287; 17 R. C. L. 385, 3 R. C. L. Supp. 673.
11. See note in 4 L. R. A. (N. S.) 485.

Action in the district court for Olmsted county for libel in publishing the following:

"The False Colors of William H. Friedell.

"William H. Friedell of Rochester has the presumption to ask the voters of Olmsted county to let him represent them in the next session of the Minnesota legislature. * * * Before voters cast their ballots for William Friedell they should find out what he is and what he stands for. He calls himself an 'American' but his 'Americanism' was of such a doubtful character that during the war it was necessary for government agents to watch him. The report of their findings is today in the hands of the Public Safety Commission and makes interesting reading, containing not only sworn

statements showing antipathy towards America's allies but utterances of sympathy for the enemies of the United States. Mr. Friedell is evidently sailing under false colors when he tries to prove his Americanism. * * * His opponent for the State legislature * * * is thoroughly loyal, a good citizen and a good American. It was not necessary for government agents to watch his actions during the war, because everybody knew that Mr. Shonyo was a frank, honest, patriotic American." * * *

The case was tried before Callaghan, J., and a jury which returned a verdict in favor of defendants. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Fraser & Fraser* and *F. A. Pike*, for appellant.

*Granger & Clemens* and *Brown, Somsen & Sawyer*, for respondent.

WILSON, C. J.

Action for libel. Plaintiff was a candidate for public office. Defendant corporation published the Rochester Daily Post and Record. A. W. Blakely and Clare W. Blakely were president and secretary respectively of the corporation. One Wurtele who was engaged in other work contributed editorials for a small weekly compensation. The corporation used such portion of the contributions as it saw fit to accept and publish. Wurtele wrote an article concerning plaintiff's candidacy. It was published. It was libelous. A demand for retraction was made without results. This suit followed. The court directed a verdict as to A. W. Blakely. The jury found in favor of the other defendants. Plaintiff has appealed from an order denying his motion for a new trial.

The answer alleged that the article was published in the belief that it was true, and in good faith discussion of matters of public interest and without malice. It is claimed that the publication was qualifiedly privileged.

A communication or publication made in good faith upon any subject matter in which the party communicating or publishing has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a correspond-

ing interest or duty, is privileged. Marks v. Baker, 28 Minn. 162, 9 N. W. 678. The subject matter of the communication in the instant case was one of public interest in the locality wherein it was published and one in which defendants had an interest as resident citizens in that community and engaged in the newspaper business. The public had a corresponding interest. It was hence a privileged publication, if made in good faith and without malice. It was accordingly conditionally privileged.

Plaintiff's candidacy for public office gave it the privileged character. Such privilege destroyed the character or element of malice incident to ordinary libel and cast the burden upon the plaintiff to show that defendants were actuated by ill will or improper motive or that they acted causelessly and wantonly to the injury of the plaintiff. The qualified privileged character of the article requires the plaintiff to prove actual malice before there can be a recovery. When so privileged the law does not imply malice from the communication itself nor from its falsity, as in the ordinary case of libel. Marks v. Baker, supra; Hebner v. G. N. Ry. Co. 78 Minn. 289, 80 N. W. 1128, 79 Am. St. 387; Hansen v. Hansen, 126 Minn. 426, 148 N. W. 457, L. R. A. 1915A, 104; Froslee v. Lund's State Bank of Vining, 131 Minn. 435, 155 N. W. 619; Patmont v. International C. M. Assn. 142 Minn. 147, 171 N. W. 302; Hoff v. Pure Oil Co. 147 Minn. 195, 179 N. W. 891, 11 L. R. A. 1010; McKenzie v. Wm. J. Burns Int. Det. Agency, 149 Minn. 311, 183 N. W. 516; Tawney v. Simonson, W. & H. Co. 109 Minn. 341, 124 N. W. 229, 27 L. R. A. 1035; Howard v. Dickie, 120 Mich. 238, 79 N. W. 191; Myers v. Longstaff, 14 S. D. 98, 84 N. W. 234; Coleman v. MacLennan, 78 Kan. 711, 98 Pac. 281, 20 L. R. A. (N. S.) 361, 130 Am. St. 390. The privilege protects only those who act in good faith and without malice.

The publication loses its qualified privilege if the statement or part of it is in fact false, and knowledge of the falsity is brought home to the person making it. Froslee v. Lund's State Bank of Vining, supra. Likewise if the publication is malicious, the occasion gives no protection. Hebner v. G. N. Ry. Co. supra.

This rule now seems to be the settled law of this state. We are

asked to change the rule to hold that liability must follow the publication of an untrue statement. The benefit of the liberty of the press is a myth, if dishonesty or questionable loyalty of candidates for public office must be handled with delicacy and discussed with such choice of words as to make it appear that the publicity is a matter of indifference. No public good could come from a rule making every publisher answerable for the literal truth of every word in his columns. Good faith and absence of malice is a good standard where there is a qualified privilege. If the liberty of the press must be exercised under a responsibility that is always threatening, it will never be used effectively for the public good. Under such a rule the dishonest man and the cheat and those who sail into public office under false colors would never be exposed. In a case of this character good faith and bad faith are as easily proved as in any other branch of the law. Malice is important in libel cases only to affect damages and to overcome a defense of privilege. But since malice is easily proved, where it exists, no plaintiff, who is a candidate for office and whose cause is just, need suffer defamation without redress. Proof of actual malice in such cases consists in showing bad faith in the defendant. It may appear from a showing that the occasion was made use of as a camouflage behind which to hide for the purpose of maligning a candidate for office in a way not justified by the facts. If it appears that the publisher knows the statement he makes is false, we need go no further. Malice may be proved by extrinsic evidence of personal ill feeling, or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, Byram v. Aiken, 65 Minn. 88, 67 N. W. 807, the mode and extent of publication, and other matters in excess of the privilege. The court submitted to the jury the question as to whether or not the publication was made in good faith and without malice so as to bring the defendants within the protection of a qualified privileged communication and the jury found for the defendants.

The defendant A. W. Blakely was away from the business of the corporation during the time the article was published and he had no knowledge of the article prior to its publication. The court prop-

erly directed a verdict in his favor. Folwell v. Miller, 145 F. 495, 75 C. C. A. 489, 10 L. R. A. (N. S.) 332, 7 Ann. Cas. 455.

Upon the trial the plaintiff made an offer of proof which had a tendency to prove malice on the part of Wurtele the author of the article. It was excluded. Was this error? The respondent attempts to justify this ruling on the theory that actual malice is necessary to destroy the qualified privilege. It is urged that malice is a state of mind and it is claimed that malice on the part of an agent is not legally imputable to the employer. Reisan v. Mott, 42 Minn. 49, 43 N. W. 691, 18 Am. Rep. 489; Benton v. Minneapolis T. & M. Co. 73 Minn. 498, 506, 76 N. W. 265; Egan v. Dotson, 36 S. D. 459, 155 N. W. 783, Ann. Cas. 1917A, 296. Corporations are however liable for the torts of their agent.

The publisher of a libel which is qualifiedly privileged can only be held liable because of actual malice. If the libeler is a corporation, it cannot escape liability because it does not have a mind that is subject to the status of malice. It can be said to have actual malice because of the malice of the person acting for it, and then only. There is no reason to say that the malice of an agent, in charge of the business, who is not an officer, cannot be so imputed. The writer of the article in question was a mere employe. The rule respondeat superior must apply to an act of the servant done in furtherance of the master's business, when the act is not to serve a purpose of the servant alone, notwithstanding the element of personal malice on the part of the servant. Barrett v. M. St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L. R. A. (N. S.) 416, 130 Am. St. 585; Munick v. City of Durham, 181 N. C. 188, 106 S. E. 665, 24 A. L. R. 538; Kwiechen v. Holmes, 106 Minn. 148, 118 N. W. 668, 19 L. R. A. (N. S.) 255; 18 R. C. L. § 256, p. 800; Peterson v. Western U. Tel. Co. 75 Minn. 368, 77 N. W. 985, 43 L. R. A. 581, 74 Am. St. 502; Ploof v. Putnam, 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 Am. St. 1085, and note; Daniel v. Petersburg R. Co. 117 N. C. 592, 23 S. E. 327; 4 L. R. A. (N. S.) 485, note. The master is liable for the tort of his servant while acting in the scope of his employment, even though the servant has an ulterior malicious motive in mind. Noland v. Morris & Co. 212 Mo. App. 1, 248 S. W.

627; Flynn v. Burgess (Mo. App.) 259 S. W. 147. The nature and character of the agency is the decisive test as to whether a particular act is within its scope. Larson v. Fid. Mut. L. Assn. 71 Minn. 101, 73 N. W. 711.

It was formerly held that malice on the part of an agent of a corporation was not imputable to the corporation. Abrath v. N. E. Ry. Co. 11 A. C. 247, 250; Addie v. W. Bank of Scotland, 1 L. R. Sch. & D. App. Cas. 145. But these decisions are no longer the law. 6 Labbatt, M. & S. (2d ed.) p. 7177, § 2374. Corporations are for several purposes regarded as persons and of course the ordinary doctrine of agency and of master and servant are applicable to them as well as to ordinary individuals. These doctrines are applied in questions arising out of contract and in questions arising out of torts and frauds and would doubtless apply to an ordinary case of libel which is not qualifiedly privileged. To apply such doctrines to one class of libels and to deny their application to another class on the ground that malice cannot be imputed to a corporation, is contrary to sound legal principles. It was said in Citizens' Life Assur. Co. v. Brown (1904) App. Cas. 423-426: "To talk about imputing malice to corporations appears to their Lordships to introduce metaphysical subtleties which are needless and fallacious," and that court held the corporation liable for such malice on the part of the agent on ordinary principles of agency. The doctrine is now well-established in England that malice or motive incident to the publication of qualified privileged matter, which recognizes actual malice on the part of the agent, is imputable to his principal which is a corporation. Spencer Bower, Actionable Defamation (2d ed.) Part XI, art. 37, p. 137 (4) (u); Citizens' Life Assur. Co. v. Brown, supra; Fitzsimons v. Duncan and Kemp & Co. (1908) 2 Ir. R. 483; Smith v. Streatfeild (1913) 3 K. B. 764; Barwick v. Eng. J. S. Bank, L. R. 2 Ex. 259; Pratt v. Brit. Med. Assn. (1919) 1 K. B. 244, 280-281; Hugh Fraser's (5th ed.) Law of Libel & Slander, pp. 261-265, also p. 134, note 2. It is said in Re Pratt v. B. Med. Assn. supra: " 'Actual malice' can be attributed to a corporate body, not only with respect to defamation and malicious prosecution, but with respect also to any other head of tort of which actual malice may constitute an ingred-

ient." Spencer Bower, Actionable Defamation (2d ed.) 264 says: "But it has not been considered, until comparatively recent times, that the malice of the agent is the malice of principal, both for the purpose of destroying a plea of defeasible immunity (which is qualified privilege) and also for the purpose of enhancing the damages where there is no such plea * * * that agent and principal are identified with one another for the former purpose, and that, on this principle, a corporation can be guilty of such malice as is required to displace a *prima facie* immunity is clearly established by Citizens' Life Assur. Co. v. Brown, supra."

Odgers, Libel & Slander (5th ed.) p. 344, says: "Malice in an agent, however, may be malice in the principal. Thus a corporation may be rendered liable for words published on a privileged occasion, by proof of malice in its servant who published them, provided the servant was acting within the scope of his employment." This obviously refers to the responsible agency.

The employer has the power of selecting his own employes and the responsibility of selecting a satisfactory employe should rest with him. It is just as important that they be honest and trustworthy as it is that they be competent. The employer may discharge them when he pleases. It would be unfair to the public if the employer were not responsible for the selection of those to whom he sees fit to intrust the responsibility of writing and publishing qualified privileged articles within the meaning of the law. When this duty is delegated to an employe, he is acting within the scope of his employment when he injects malice into the article which he is authorized to write and publish, even though he does this without the knowledge of the employer. If such employer misplaces confidence and trust in such employe, the consequences should rest with the one who° makes the selection. Even though the injection of such malice is a positive wrongful act for the purpose of satisfying his own personal desires and not in the interests of his employer, it is so mingled with his regular work and the scope of his employment that it must follow that the wrongful act is done in the course of his employment. The unauthorized act is merely a wrong way of doing the thing the employe is supposed to do, that is, the wrongful act

·is done in pursuit of the employment itself. The proprietor of a saloon whose servant, acting in the scope of his authority, wilfully puts a drug in a drink served to a customer, is liable. Tway v. Salvin, 109 App. Div. 288, 95 N. Y. Supp. 653. The poison from the pen of the editorial writer is analogous.

It is a reflection on justice to say that a publisher may escape liability by proving that the agent's malice is no proof of his own. In fact, he really puts himself in the place of the agent and gives the malice fresh life. The mere fact that the same article might be written by one without malice is an additional reason why the principal alone should be charged with the responsibility of selecting an agent who will not so forget his trust as to inject malice. The statute requiring a demand for retraction, section 9397, G. S. 1923, affords the publisher substantial protection and the perils of his business do not demand that we relieve him of the ordinary rules of agency. There are many cases that hold the master to be liable for the wanton and malicious acts of his servant in the execution of his duties of employment. This rule of law is applicable to all employers and includes proprietors of newspapers who employ others to write for its columns. The right of the individual to be protected against calumny is equally as sacred as the liberty of the press.

We are of the opinion that this law should, in its application to qualifiedly privileged articles, be restricted to those agents who are intrusted with the responsibility of determining what should and what should not be published. We must look to the agency responsible for the publication to determine liability. This limited application results from the fact that, if a privileged article is written without malice, its publication is authorized, but if written with malice its publication is unauthorized. The person charged with the duty of determining what shall be published cannot in the best of faith, discover the presence of actual malice in such an article. The unobservable actual malice is the only distinguishing feature. Public service and public duty are the fundamental reasons for the doctrine of qualified privilege. No rule of law should be permitted

to hamper the general welfare. In an action against the publisher of a magazine, evidence that the editor or the author of any article not being the defendant has malice against the plaintiff is inadmissible. Odgers, Libel & Slander (5th .ed.) p. 344. Egan v. Dotson, 36 S. D. 459, 155 N. W. 783.

Our conclusion protects the individual or corporation publisher from the hidden malice of the obscure employe only. Such malice is unknown to .the employer who could freely publish the same article if written by another or even by the same person without malice. The law requires proof of actual malice in such case on the part of the responsible agency, and the writer of the article in question was not such. The offer was properly excluded.

Affirmed.