JOHN J. McLAUGHLIN v. JAMES QUINN AND ANOTHER.[1]

June 26, 1931.

No. 28,382.

Snyder, Gale & Richards, for appellants.
N. A. L'Herault, for respondent.

[1]Reported in 237 N. W. 598.

STONE, J.

Action for libel wherein plaintiff had a verdict for $500. Defendants appeal from the order denying their alternative motion for judgment notwithstanding the verdict or a new trial.

Defendant John Hancock Mutual Life Insurance Company is a corporation writing old line life insurance and also industrial policies. Premiums on the latter are paid weekly. Some involved here were as low as 20 cents. During the determinative period defendant Quinn was the superintendent of the Minneapolis agency of his codefendant. Plaintiff was in the employ of defendant insurance company, under the supervision of Quinn, as collector and soliciting agent. He says he resigned, but Quinn testified that on account of the shortage hereinafter referred to plaintiff was discharged January 11, 1928. Because of an alleged delinquency of $177.76 he was arrested at the instigation of the surety company which had bonded him as agent. He was not jailed. The criminal proceeding was dropped when, immediately after his arrest and with the assistance of relatives, plaintiff paid $150 in settlement of his shortage. There is testimony from which the conclusion is tenable that plaintiff was arrested solely for the purpose of collecting the sum due the bonding company, which apparently had made good the shortage. The home office of the insurance company had instructed Quinn to swear out the warrant for plaintiff's arrest "if requested to do so by the surety company's representative."

May 9, 1928, signing as superintendent, defendant Quinn wrote "To Whom it May Concern" a general letter recommending plaintiff. He certified to plaintiff's employment "under the management of the undersigned during the past five years." On the basis of a reputation known to the writer "during the past ten years," plaintiff was given a "good record" and said to be "extremely loyal to his employer, and is a nice man to have in an organization." The letter concluded as follows: "His health broke, and he was unable for five weeks to do anything, on account of illness, and he thought perhaps a change of employment would help him, as he has been a very hard worker in our line of business."

Defendant Quinn does not claim any factual justification for this letter. He excuses it on the ground that he wanted to help a needy man seeking re-employment, and himself characterized the letter as having gone beyond the limits of discretion.

The libel charged is found in two letters written by defendant Quinn as "superintendent," one June 13, and the other June 29, 1928. The first charged plaintiff with soliciting business for another company without a license. That is a misdemeanor under our statute. G. S. 1923 (1 Mason, 1927) § 3366. The letter went on to say concerning plaintiff that he had been dismissed because of and "was arrested for a shortage of $176.00 which he afterward paid to the bonding company." The letter of June 29 was of the same import. Both accused plaintiff of improper efforts to "twist" John Hancock business, i. e. to cause its policyholders to lapse their policies and reinsure in another company by which plaintiff was then employed.

The defense was that the charges were true and that in any event the communications were privileged.

■ The testimony made it a question of fact whether plaintiff had solicited business for another insurance company without a license. A similar fact issue arose concerning the accusation that he had attempted to "twist" outstanding policies of defendant insurance company. The important issue was whether plaintiff had been guilty of such delinquency as to warrant his arrest on a criminal charge. The statement that he had been so arrested and had settled by paying the money was in effect an accusation of having been guilty of larceny and having admitted the theft. The evidence for defendants is that plaintiff had collected and "appropriated" to his own use that much of his employer's money. But plaintiff's testimony is an emphatic denial of that. The company's rule required him to lapse policies in arrears four weeks. Policyholders were given that much of a period of grace. Thereafter the agent had another week in which to make collection. If he carried such policies beyond that period it was a violation of rules, at his own risk, and he was personally liable. Plaintiff testi-

fied that all he did was to carry some of his needy and delinquent customers, holders of the industrial policies, beyond the period allowed him by the rule. Were the issue one of his civil liability for the premiums in question, it would be resolved against him as matter of law. But the question is not of civil obligation, but rather of criminal liability. Plaintiff's testimony that he had not collected money of his employer for which he had not accounted— that he had not appropriated any such money to his own use—was believed by the jury. It was of a nature to make a fact issue, and the verdict settles it. It is determinative, against defendants, of their averment that the charges were true.

The assignments of error not covered by the foregoing discussion of the facts challenge what is considered a refusal to instruct that the communications were privileged as matter of law. At the close of plaintiff's evidence there was a motion for directed verdict. The motion was repeated at the close of all the evidence upon the same grounds first urged. So far as privilege is concerned, the motion asserted that the letters in question "were privileged communications and that no actionable malice has been shown to exist or to have prompted the defendants in sending the letters." There was no request for a specific instruction on the question of privilege; and, neither as to form or substance, was exception taken or question made as to the manner in which the jury was instructed. They were given the law as to defendants' theory of qualified privilege in a form which was not criticized at the time and is not seriously questioned now.

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do." 17 R. C. L. 341, citing, inter alia, Trebby v. Transcript Pub. Co. 74 Minn. 84, 89, 76 N. W. 961, 962, 73 A. S. R. 330. There a privileged

communication was defined as "one made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable." See also Marks v. Baker, 28 Minn. 162, 9 N. W. 678; Hansen v. Hansen, 126 Minn. 426, 148 N. W. 457, L. R. A. 1915A, 104; Froslee v. Lund's State Bank, 131 Minn. 435, 155 N. W. 619; McKenzie v. W. J. Burns Int. D. Agency, Inc. 149 Minn. 311, 183 N. W. 516; Friedell v. Blakely Printing Co. 163 Minn. 226, 203 N. W. 974; 4 Dunnell, Minn. Dig. (2 ed.) § 5526.

The jury was told that a statement of this kind was prima facie privileged, but that to render it so it "must be relevant and proper in the connection in which it is made. It must be made without actual malice, in good faith, and in an honest belief that it is true." They were given in that connection the substance of the statutory law concerning the duties of an insurance agent or solicitor and the issue of licenses by the insurance department. Quoted to them was the statute (G. S. 1923 [1 Mason, 1927] § 3352) which among other things provides:

"No person shall be licensed by the commissioner of insurance as an insurance agent or solicitor if the commissioner of insurance shall be satisfied that such person is incompetent or unqualified to act as such insurance agent or solicitor; * * * or that such person is untrustworthy or of bad moral character; or that such person has unreasonably failed to pay over to any insurer, agent or solicitor, or policyholder or member of any insurance company or association entitled thereto the whole or any part of any premium or return premium, or moneys or other thing of value in his hands, arising out of any insurance transaction, and due or payable to or belonging to any policyholder or other person, firm or corporation."

As above observed, there was an issue of fact whether plaintiff had appropriated money of his employer. Pertinent in that con-

nection was the strongly commendatory letter written by defendant Quinn. There is evidence that when Quinn learned of plaintiff's employment by a competing company and his supposed "twisting" of the business of his former employer (as to which, we repeat, there was another issue of fact) he used toward plaintiff abusive language of a volume and of vituperative character sufficient to sustain the verdict as a finding of actual malice.

We do not overlook, but need not discuss, the point for defendants that the verdict is excessive. We cannot say as matter of law that $500 was too high an appraisal of plaintiff's damage. Certainly it is impossible to conclude that there was abuse of discretion, on the part of the learned trial judge, in declining to interfere with the verdict so far as amount is concerned.

Order affirmed.